PEOPLE v GRAY

1. CRIMINAL LAW—APPEAL AND ERROR—PROSECUTOR'S QUESTIONS—
   MISCARRIAGE OF JUSTICE.

   Review of a claim of error resulting from the alleged prejudicial
   questioning by a prosecutor is limited to ascertaining whether
   or not a miscarriage of justice occurred where defense counsel
   failed to object; no miscarriage of justice occurred where the
   alleged error was in a single question by the prosecutor regard-
   ing a prior conviction and where the defendant, on direct
   examination, actually benefited by leading the jury to believe
   that he had been convicted of a less serious crime.

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRIOR OFFENSES.

   A single mischaracterization by a trial judge in his jury instruc-
   tions on credibility in which the judge referred to the defend-
   ant's prior *offenses,* instead of the defendant's prior *offense,* did
   not result in a miscarriage of justice; the error did not pertain
   to a basic or controlling issue and the error could have been
   easily cured if defense counsel had objected.

3. CRIMINAL LAW—SENTENCING—JUDGES—DISCRETION—APPEAL AND
   ERROR.

   The trial judge alone determines the length of a defendant's
   sentence; his decision is not subject to review if it is within the
   limits of the law.

4. CRIMINAL LAW—SENTENCING—CLAIMED INNOCENCE.

   A defendant who maintains his innocence after conviction may
   not be given a longer sentence solely because he refuses to
   admit his guilt.

5. CRIMINAL LAW—SENTENCING—LACK OF REMORSE—STATUTES.

   A defendant's failure to express any remorse concerning a prior
   conviction, or concerning commission of a crime which he does
   not deny, is a relevant facet of his character and may be taken

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 5 Am Jur 2d, Appeal and Error § 778.
[3–5] 21 Am Jur 2d, Criminal Law §§ 525, 533, 535, 536.
[4, 5] 21 Am Jur 2d, Criminal Law § 530.

into account by a sentencing court (MCLA 771.14; MSA 28.1144).

Appeal from Recorder's Court of Detroit, Dalton A. Roberson, J. Submitted November 5, 1975, at Detroit. (Docket No. 23680.) Decided December 4, 1975.

Dennis E. Gray was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Robert W. Horn,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant.

Before: D. E. HOLBROOK, P. J., and J. H. GILLIS and M. J. KELLY, JJ.

D. E. HOLBROOK, P. J. Defendant was charged with robbery while armed, contrary to MCLA 750.529; MSA 28.797. He was found guilty by a jury, and sentenced to 15 to 25 years imprisonment. He now appeals.

Defendant's conviction resulted from testimony tending to show occurrences as set forth below.

At approximately 12:05 a.m. on September 10, 1974, two men came through the front door of Little Harry's Restaurant on East Jefferson in Detroit. One of the men carried a sawed-off shotgun. The other man was identified by several witnesses as the defendant. The man with the sawed-off shotgun announced a stickup and told

everybody to get down on the floor. The people in that particular room laid down on the floor, but the piano player got up and ran. Defendant chased and caught the piano player, then told him that he didn't want to hurt him and to "be cool". Everyone was then taken into the kitchen where they were again made to lie on the floor while defendant relieved them of their valuables. The night manager of the restaurant pleaded with defendant not to take his wedding ring, but defendant responded by saying "take it off or I'll blow your blank blank head off".

Defendant then went into the bar area where he told the bartender and patrons to get into the kitchen. When they did so they were made to lie on the floor and were relieved of their valuables.

During this time a certain Mr. English was employed at Little Harry's Restaurant. On the night in question, he was in the kitchen when he heard someone come into the restaurant and announce a stickup. He ran to the second floor and jumped out one of the windows on that floor. He went across the street to a police garage and told the police what was happening. Two policemen came with Mr. English to the restaurant, and called for some more policemen. The policemen then surrounded the building.

Back inside the restaurant, after everyone had been forced to give up their valuables, the two men announced that they were leaving and ordered everyone to stay face-down on the floor for ten minutes. Defendant and the other man then ran out the front door, but the other man came back inside right away and ran upstairs.

One of the police officers from the police garage arrested defendant as he exited the restaurant. This officer testified as follows:

"*Q. (By Mr. Morgan, prosecuting attorney)* Where did you first observe Mr. Gray?

"*A.* The top of the steps in front of the restaurant Little Harry's Restaurant.

"*Q. Was he walking?*

"*A. No he came out the front door and was running.*

"*Q.* What happened next?

"*A.* He came down the foot of the steps turned west around the west part of the building and I apprehended him there." (Emphasis supplied.)

When apprehended the defendant said: "[D]on't shoot I did it." A search of the defendant revealed that he was carrying a green garbage bag containing money, rings and watches.

Defendant took the stand in his own behalf. On direct examination, defendant testified as follows:

"*Q.* Have you ever been convicted of a crime?

"*A.* Yes sir when I was in the twelfth grade I was convicted of attempt unarmed robbery.

"*Q.* Attempt unarmed robbery?

"*A.* Yes sir.

"*Q.* That was in what year?

"*A.* '72 I think."

Defendant then testified that on the evening of September 9, 1974, he was riding his bicycle down East Jefferson. At about 11 p.m., defendant testified, he stopped at Little Harry's to get a cup of coffee. He testified that he went through the front door of the building, but when he opened the second door, he saw a man with a shotgun standing inside so he "eased back out". Defendant testified that after he came back outside, he looked to the side and saw some money on the ground. He testified that he picked the money up and put it in both pockets. He then said that he turned around

and saw a police officer, and that he told the officer: "I'm guilty of picking this money up off the ground". On cross-examination the prosecutor asked defendant:

"*Q.* Mr. Gray were you convicted in 1973 of assault with intent to rob while being armed?
"*A.* No sir.
"*Q.* No. Do you know Keith Miles?"

This was the only mention the prosecutor made of a prior conviction. He did not pursue the matter further. There was no objection to the question.

In his charge to the jury, the trial court stated:

"Now under the law in this State the defendant may take the stand or elect not to do so.
"In this case the defendant took the stand. When he takes the stand it is your duty to weigh and analyse *[sic]* and consider his testimony exactly the same as you do that of any other witness in the case. You will seek to determine what the true facts are from his testimony the same as any other witness.
"You will apply the same test to determine the truth or falsity and weight and credibility that you will attach to that testimony.
"You have no right to discredit his testimony merely because he is the defendant in the case but on the contrary if you find his testimony to be rational natural and consistant *[sic]* it may outweigh the testimony of all the other witnesses in the case and be sufficient for you to return a verdict of not guilty.
"However merely because he is the defendant in the case you are not bound to give his testimony any greater weight or credibility than you will that of any other witness.
"Now Ladies and Gentlemen as I indicated to you previously the defendant took the stand in this matter. You heard something about a previous conviction in this case of his record.

"There has been, I want to give you what the law is on that and how you are to use that.

"There has been some testimony here regarding the defendant's previous conviction for other *offenses*. That testimony is admissable *[sic]* to determine what weight or credibility you will attach to his total testimony. That testimony is of course in no sense proof of guilt or his participation in this particular offense as charged here; but it is admitted solely for the purpose of enabling you to determine the credibility that you will attach to his testimony or the weight that you will give it and in considering it it is not to be used to determine whether he is guilty or innocent of this particular offense which he is on trial for here today but merely for you to determine his credibility." (Emphasis supplied.)

The jury found defendant guilty as charged.

Defendant first alleges that reversible error was committed when the prosecutor suggested, in a question, that defendant had been convicted of assault with intent to rob while being armed, and when the judge, in his charge, referred to testimony of other "offenses" committed by defendant when he had admitted to only one previous conviction. Defendant bases this claim of error on the question we have quoted above. That single question by the prosecutor was the only time during the case where he referred to any prior conviction. Defense counsel did not object when the prosecutor asked the question. There was apparently good reason for not objecting, as evidenced by the following excerpt from the sentencing transcript:

"*The Court:* Mr. Gray you were before the court and during the time of the trial the prosecutor asked if you had ever been convicted of a crime and you indicated that you had been convicted of what was it Mr. Murphy do you remember what it was, it was not a true statement as to what the conviction was.

"*Mr. Murphy (defense attorney):* Well your Honor it was a conviction—

"*The Court:* Well I'm trying to make sure that the record is straight on that because he indicated that he was convicted of robbery unarmed or attempt robbery armed.

"*Mr. Gray:* Yes.

"*The Court:* You were actually convicted of assault with intent to rob while being armed and that's what the record reflects.

"*Mr. Gray:* I'm talking about what I copped out to.

"*The Court:* What did you cop out to?

"*Mr. Gray:* Attempt, let's see attempt armed robbery without being armed.

"*The Court:* No you didn't that's not what the report reflects.

"The report reflects that your prior record indicates that you pled guilty to assault with intent to rob being armed on May 16th, 1973 before the Honorable Henry Heading and that you were sentenced one to five.

"*Mr. Gray:* I made a mistake.

"*The Court:* Is that true, do you realize that that is what happened to you now?

"*Mr. Gray:* Yes I realize now, that you done told me I realize your Honor."

As the above quote indicates, defendant actually was convicted of assault with intent to rob being armed and not, as the defendant had earlier urged, of "attempt unarmed robbery". The fact that the prosecutor did not confront the defendant with the truth shows a lack of effort on the prosecutor's part to prejudice the defendant's case. This was not a case where the prosecutor implies an offense or over-emphasizes a conviction that he does not prove. However, since defense counsel failed to object at trial, our review is limited to ascertaining whether or not a miscarriage of justice resulted. *People v Edwards,* 55 Mich App 256, 263; 222 NW2d 203, 206 (1974). As the record

demonstrates, the defendant actually benefited by leading the jury to believe that he had not been convicted of the more serious crime. Certainly, he cannot claim that there was a miscarriage of justice resulting in prejudice to him on this record.

Defendant also complains of the word "offenses" as used by the trial judge in the jury instructions we have above quoted. The word may have been a slip of the tongue on the part of the trial judge, or it may have been a result of the fact that defendant claimed to have been convicted of one crime while the prosecution had asked a question based on another crime. As indicated above, the prosecution was right and the defendant was wrong. It would seem that any confusion here was brought about by the defendant himself. At any rate, it is difficult to conceive that defendant would be prejudiced at all by the single mischaracterization on the part of the trial judge during his jury instructions on credibility. Again, defendant did not object to the alleged error in the jury instruction. Therefore, the jury's verdict will not be set aside on the basis of that alleged error unless there was a miscarriage of justice. *People v Auer,* 393 Mich 667; 227 NW2d 528 (1975), *People v Szymarek,* 57 Mich App 354, 356–357; 225 NW2d 765, 766 (1975). This is precisely the type of error which could have been easily cured had defense counsel objected. Further, the error did not pertain to any issue which was either basic or controlling. There was no miscarriage of justice.

Defendant next contends that this case should be remanded to the trial court for resentencing before another judge. Defendant bases his claim on the allegation that the trial judge took defendant's lack of remorse into account in passing sentence on the defendant. Defendant apparently bases this

contention upon certain statements made by the parties at the sentencing proceeding. There, defense counsel had asked that the judge refer the defendant to:

"[P]sychiactric *[sic]* or psycological *[sic]* or some kind of counselling in an attempt to help him because he's got a long life ahead of him and I don't want to see him locked up for the rest of his life. I want to see him become productive and an able member of society.

"*The Court:* I do too Mr. Murphy but you know the first person to realize that has to be Mr. Gray."

After defense counsel had finished addressing the court, the defendant expressed a desire to address the court. The following occurred:

"*The Court:* Mr. Gray what do you have to say?

"*Mr. Gray:* I would just like to know would it be okay if you'll point the State attorney for my appeal?"

The court indicated that he would appoint an attorney for the defendant. The court then pointed out to defense counsel that defendant did not seem to be remorseful, but was only worried about an appeal.

It would be unfair to assume that the trial court arrived at his conclusion that defendant was without remorse merely from the statement made by defendant at the sentencing proceeding. Indeed, the trial court specifically mentioned that the probation authorities had remarked upon defendant's lack of remorse for either this or his prior conviction. Also, it is unclear whether or not defendant's lack of regret was even a factor in the sentence he received. The court had recited many other items as factors he had considered in arriving at defendant's sentence.

Generally, it is the trial judge alone who determines the length of a sentence. His decision is not subject to review if it is within the limits of the law. *People v Malkowski,* 385 Mich 244, 247; 188 NW2d 559, 561 (1971). Defendant, however, urges that *People v Grable,* 57 Mich App 184; 225 NW2d 724 (1974), compels a different result in this case. *Grable* is not relevant to this appeal, as it was a case in which a defendant maintained his innocence after conviction. The trial judge in that case attempted to get the defendant to admit his guilt. It affirmatively appeared that, had the defendant admitted his guilt, his sentence would not have been so severe. These factors are simply not present in this case. Here, the defendant did not maintain his innocence, the trial judge did not attempt to make the defendant admit guilt, and it nowhere appears that defendant would have received a lighter sentence had he admitted committing the crime.

MCLA 771.14; MSA 28.1144, provides in relevant part:

"Before sentencing any person charged with a felony, and, if directed by the court, in any other case where any person is charged with a misdemeanor within the jurisdiction of the court, the probation officer shall inquire into the antecedents, character and circumstances of such person or persons, and shall report thereon in writing to such court or magistrate."

It would seem that a defendant's failure to express any remorse or regret at all concerning a prior conviction, or concerning his commission of a crime which he does not deny, would be a very relevant facet of his character. It may be noted by the probation officer. It may be taken into account by a sentencing court. We therefore hold that, if

indeed the trial court did consider defendant's lack of remorse in passing sentence, such was not error.

We have examined defendant's other allegations of error and found them to be without merit.

Affirmed.