PEOPLE v WESLEY

Docket No. 77844. Argued January 13, 1987 (Calendar No. 17).
Decided August 25, 1987. Certiorari denied by the Supreme
Court of the United States on November 30, 1987, 484 US —
(1987).

James H. Wesley was convicted by a jury in the Bay Circuit
Court, William J. Caprathe, J., of first-degree criminal sexual
conduct and was sentenced to forty to sixty years in prison. The
Court of Appeals, GILLIS, P.J., and CYNAR and EVANS, JJ.,
affirmed the conviction and sentence in an opinion per curiam
(Docket No. 79299). The defendant appeals, claiming that resen-
tencing is required because the trial court relied on his asser-
tion of innocence in imposing sentence.

In opinions by Justice ARCHER, joined by Justice GRIFFIN, by
Justice BRICKLEY, joined by Justice LEVIN, by Justice CAV-
ANAGH, joined by Justice BOYLE, and by Chief Justice RILEY, the
decision of the Court of Appeals was affirmed.

Justice ARCHER, joined by Justice GRIFFIN, stated that a
sentencing court cannot, in whole or in part, base a sentence on
a defendant's refusal to admit guilt; however, evidence of the
defendant's lack of remorse may be considered in determining
the defendant's potential for rehabilitation.

1. Sentencing is a matter of judicial discretion. Absent abuse
of discretion, a trial court's sentence will not be disturbed on
appeal unless it shocks the conscience of the Court. A sentence
must be based upon the particular circumstances of each case
and must depend upon material facts, including the potential
for reformation of the offender, the protection of society, the
discipline of the wrongdoer, and deterrence of others from
committing like offenses. A defendant's lack of remorse as it
bears upon rehabilitation may be considered by a trial court in
imposing a sentence. Lack of remorse may be inferred from
statements in a presentence report. In determining whether a
sentence was improperly influenced by the defendant's failure
to admit guilt, an appellate court may consider the defendant's
maintenance of innocence after conviction, the trial court's
attempt to have the defendant admit guilt, and the appearance
that had the defendant admitted guilt the sentence would have
been less severe. Where, however, the record reveals that the
trial court did no more than address the factor of remorseless-

ness as it bore upon the defendant's rehabilitation, a reference to the defendant's persistent claim of innocence will not amount to error requiring reversal.

2. In this case, the trial court did not abuse its discretion in determining the defendant's sentence. The court neither asked the defendant to admit guilt nor offered a reduced sentence in exchange for such an admission, and the sentence imposed was not improperly influenced by the defendant's failure to admit guilt. Rather, the court properly relied on information in a presentence report, focusing on the history and character of the defendant, and addressed the factor of remorselessness only in determining his potential for rehabilitation. The defendant had an opportunity to challenge the report, as well as the court's conclusion based on it. In addition, the court made clear in stating its reasons for exceeding the sentencing guidelines that the defendant's assertion of innocence was not the reason for imposing the enhanced sentence. None of the reasons for departing from the sentencing guidelines contained a reference to a failure to admit guilt.

Justice BRICKLEY, joined by Justice LEVIN, concurring in the result, stated that because the trial judge stated with specificity his reasons for departing from the sentencing guidelines, and consideration of the defendant's lack of remorse was not one of the reasons stated, the judgment of the Court of Appeals should be affirmed. However, the analysis of the issue of lack of remorse in the lead opinion is incorrect. Two concepts are distinguished: a defendant's continued refusal to admit guilt and a defendant's lack of remorse. The former is deemed to be an improper sentencing consideration, while consideration of the latter is approved. In this case, such a distinction is illusory, since the finding that the defendant was unremorseful rested solely on his continued assertions of innocence. The effect of the decision urged by the lead opinion would be that sentencing judges may not impose a higher sentence on the basis of a defendant's continued refusal to admit guilt, but may do so by finding a lack of remorse solely on the basis of that refusal. Where a defendant has been wrongfully convicted, the lead opinion, additionally, would compound the injustice by imposing further punishment for assertions of innocence. A sentencing judge should be allowed to consider those factors which fall within the rubric of remorselessness, but which exist apart from a defendant's continued assertions of innocence. If it is genuinely believed that the challenged remarks of the sentencing judge were not relied upon, it should be concluded that the propriety of the remarks need not be considered. Once the

propriety of the remarks is reached, however, reliance must be presumed.

Justice CAVANAGH, joined by Justice BOYLE, concurring, stated that the distinction between a defendant's continued refusal to admit guilt and a lack of remorse is largely illusory. Once a defendant has pled guilty or been convicted of a crime, a trial court, in imposing sentence, must act on the basis of an honest belief in the defendant's guilt. Given the acceptance of the defendant's guilt as a premise, the court's perception of the defendant's truthfulness or lack of remorse, to a certain degree, is predetermined.

Chief Justice RILEY, concurring, stated that the trial court did not abuse its discretion in relying upon information contained in the presentence report and the defendant's failure to object to its use in imposing a sentence which exceeded the sentencing guidelines on the basis of the defendant's potential for rehabilitation. Consideration of his proclivity toward rehabilitation was proper, and it is unnecessary to decide whether the defendant's lack of remorse, inferred from his refusal to admit guilt, properly may have been relied upon to increase his sentence.

Affirmed.

148 Mich App 758; 384 NW2d 783 (1985) affirmed.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *George B. Mullison,* Prosecuting Attorney, and *Martha G. Mettee,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *James Krogsrud*) for the defendant.

ARCHER, J. Following a jury trial in the Bay Circuit Court, the defendant was convicted of one count of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a), and was sentenced to forty to sixty years in prison. The Court of Appeals affirmed the defendant's conviction and sentence in an unpublished per curiam opinion. At the request of Circuit Judge William Caprathe, the trial judge in this case, the opinion was later published. 148 Mich App 758; 384 NW2d 783 (1985).

We granted defendant's application for leave to appeal on June 24, 1986, as to whether a defendant must be resentenced when the sentencing judge relies on the defendant's assertion of innocence.

We would hold that while a sentencing court cannot, in whole or in part, base its sentence on a defendant's refusal to admit guilt, *People v Yennior,* 399 Mich 892; 282 NW2d 920 (1977), evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation. Here, the trial court made clear when stating its reasons for exceeding the sentencing guidelines that defendant's assertion of innocence was not the reason for imposing the harsh sentence. We therefore conclude that the trial court did not abuse its discretion in determining the defendant's sentence.

### FACTS

Defendant, age fifty-seven, was charged with one count of first-degree criminal sexual conduct with a seven-year-old girl. The defendant, who had no prior convictions, testified at trial, maintaining that the criminal act had not occurred. Following a five-day trial, the defendant was convicted of the charged offense and sentenced to forty to sixty years in prison. The minimum sentence recommended by the Supreme Court Sentencing Guidelines indicates thirty-six to seventy-two months (three to six years). Relying on *Yennior, supra,* the defendant then appealed to the Court of Appeals, claiming that the sentencing judge improperly considered defendant's denial of guilt in setting his sentence, as suggested by the following language:

Although you deny the offense, Mr. Wesley, a

jury found you guilty of the offense. There were three witnesses that testified that you did it. One of the problems here that I see, as far as any kind of rehabilitation is concerned, is that you do not feel you have a problem in this area and, therefore, any kind of rehabilitation or counseling would have to be on some sort of a forced effort. Because, if you don't believe you have a problem, which is your position, and you have a right to take that position, the hope of recovery or rehabilitation, however one wants to put it, diminishes, in my opinion, and makes the situation a difficult situation. If you believe you don't need counseling, then it has a negative impact on any counseling that's required by the Court. Also, that in—is a situation which leads the Court to believe that any kind of rehabilitation would have to take place in prison. Not only because of the less likelihood of rehabilitation taking place, but also the fact that it would be the threat to the safety of society, more particular in this case, the safety of children, if you're out in some sort of a program on the outside being forced to have this kind of counseling.

The defendant argues that his sentence should be vacated and the cause remanded for resentencing by a different judge because the trial court erred in considering defendant's refusal to admit guilt. The defendant specifically requests that we follow our decision in *People v Yennior, supra,* where we held that a court cannot base a sentence, even in part, on a defendant's refusal to admit guilt.

We note initially that sentencing is a matter of judicial discretion, and, absent abuse of that discretion to the extent that the sentence shocks the conscience of the appellate court, a trial court's sentencing decision will not be disturbed on appeal. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). A trial court's decision as to the proper sentence must be based upon the particular cir-

cumstances of each case and dependant upon material facts. Such factors include: (1) the potential for the reformation of the offender, (2) the protection of society, (3) the discipline of the wrongdoer, and (4) the deterrence of others from committing like offenses. *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972); *Coles, supra.*

While this Court has never specifically addressed the issue, in determining whether sentencing was improperly influenced by defendant's failure to admit guilt, the Court of Appeals has focused upon three factors: (1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. See, e.g., *People v Gray,* 66 Mich App 101; 238 NW2d 540 (1975); *People v Grable,* 57 Mich App 184; 225 NW2d 724 (1974); *People v Fleming,* 142 Mich App 119, 127; 369 NW2d 499 (1985). Under the Court of Appeals analysis, if there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence. If, however, the record shows that the court did no more than address the factor of remorsefulness as it bore upon defendant's rehabilitation, then the court's reference to a defendant's persistent claim of innocence will not amount to error requiring reversal. See, e.g., *People v Gray, supra; People v Stubbs,* 99 Mich App 643; 298 NW2d 612 (1980); *People v Camon,* 110 Mich App 474; 313 NW2d 322 (1981), lv den 414 Mich 859 (1982); *People v Pottruff,* 116 Mich App 367; 323 NW2d 402 (1982), lv den 414 Mich 924 (1982); *People v Ross,* 145 Mich App 483; 378 NW2d 517 (1985). Using similar analyses, other jurisdictions have made the distinction between a court's consideration of a defendant's failure to admit guilt and its

consideration of a defendant's lack of remorse.[1] We would approve of the Court of Appeals analysis and would adopt its conclusion that a defendant's lack of remorse may be considered by a court in imposing sentence.

It is permissible to infer a defendant's lack of remorse from statements contained in presentence reports. MCL 771.14; MSA 28.1144; *People v Lee,* 391 Mich 618; 218 NW2d 655 (1974); *People v Carter,* 128 Mich App 541, 550; 341 NW2d 128 (1983). As noted by Maine's Justice Caroline D. Glassman,

> The sort of information collected in presentence reports provides a far more finely brushed portrait of the man than do a few hours or days at trial. [*State v Farnham,* 479 A2d 887, 896 (Me, 1984).]

The propriety of a sentencing court's consideration of a defendant's remorsefulness at sentencing is also evidenced by the statutory requirement that the court be provided with reports on the "antecedents, character, and circumstances" of a defendant before sentencing.[2]

The defendant's attitude as it reflects his reha-

---

[1] See, e.g., *Poteet v Fauver,* 517 F2d 393 (CA 3, 1975); *Herbert v Maryland,* 31 Md App 48; 354 A2d 449 (1976); *People v Moffett,* 55 Ill App 3d 939, 941-942; 13 Ill Dec 647; 371 NE2d 364 (1977); *People v Mosley,* 87 Ill App 3d 903; 42 Ill Dec 766; 409 NE2d 381 (1980); *People v Costello,* 95 Ill App 3d 680, 687-689; 51 Ill Dec 178; 420 NE2d 592 (1981); *People v Rodriquez,* 100 Ill App 3d 244, 249-251; 55 Ill Dec 440; 426 NE2d 586 (1981); *People v Albanese,* 102 Ill 2d 54, 80-81; 79 Ill Dec 608; 464 NE2d 206 (1984); *People v Danis,* 129 Ill App 3d 664, 668-670; 84 Ill Dec 798; 472 NE2d 1194 (1984); *State v Farnham,* 479 A2d 887 (Me, 1984); *Schiro v State,* 479 NE2d 556 (Ind, 1985); *Mahla v State,* 496 NE2d 568, 575 (Ind, 1986); *Guenther v State,* 495 NE2d 788 (Ind, 1986), aff'd in part and vacated in part 501 NE2d 1071 (Ind, 1986).

[2] MCL 771.14; MSA 28.1144 provides in relevant part:

> Before sentencing any person charged with a felony, and, if directed by court, in any other case in which any person is charged with a misdemeanor within the jurisdiction of the

bilitative potential is a factor by which courts of review determine whether sentencing was improperly influenced by a failure to admit guilt following conviction. See, e.g., *Gray, supra; Stubbs, supra; Camon; Pottruff; Ross, supra.*

In the case at bar, the sentencing judge made an extensive record, stating the criteria which he had considered before determining sentence. The court repeatedly alluded to the defendant's failure to acknowledge his sexual "problem." As stated by the court:

> Although you deny the offense, Mr. Wesley, a jury found you guilty of the offense. There were three witnesses that testified that you did it. *One of the problems here that I see, as far as any kind of rehabilitation is concerned, is that you do not feel you have a problem in this area and, therefore, any kind of rehabilitation or counseling would have to be on some sort of a forced effort. Because, if you don't believe you have a problem, which is your position, and you have a right to take that position, the hope of recovery or rehabilitation, however one wants to put it, diminishes, in my opinion, and makes the situation a difficult situation. If you believe you don't need counseling, then it has a negative impact on any counseling that's required by the Court.* Also, that in—is a situation which leads the Court to believe that any kind of rehabilitation would have to take place in prison. Not only because of the less likelihood of rehabilitation taking place, but also the fact that it would be the threat to the safety of society, more particular in this case, the safety of children, if you're out in some sort of a program on the outside being forced to have this kind of counseling. [Emphasis added.]

court, the probation officer shall inquire into the antecedents, character, and circumstances of the person, and shall report in writing to the court.

The emphasized language, particularly the three references to the defendant's failure to recognize that he has a problem, manifests the trial judge's concern with the defendant's failure to appreciate the detrimental effect of his sexual actions, as opposed to his failure to admit guilt.

The present case is unlike *Grable, supra,* where the sentencing court erroneously considered the defendant's failure to admit guilt. Here, the sentencing judge neither asked defendant to admit his guilt nor offered him a lesser sentence if he did. While rewarding a defendant for a posttrial admission of guilt would violate the defendant's right to appeal, the implication of better treatment on sentencing found in *Grable* and its progeny, if he admitted his guilt, was not present here. The court never indicated in any manner that an admission of guilt would reduce the defendant's sentence. If there had been such an indication, then the sentence would have been improperly influenced by the defendant's claim of innocence. Instead, the court focused on the history and character of the defendant as evidenced from the presentence report in determining his potential for rehabilitation.

The defendant had an opportunity to challenge the presentence information, and the judge's conclusion based thereon, either contemporaneously or upon filing a motion to correct error. No objection was ever made.

The court found the defendant's undenied past sexual conduct with his daughters and the victim's sister to be relevant to its evaluation of the defendant's potential for rehabilitation. In addition to the defendant's sexual misconduct, Judge Caprathe indicated in his sentencing other factors that were causing him to go outside the sentencing guidelines. He repeated those factors, none of

which contained any reference to a failure to admit guilt on the part of the defendant. This is evidenced by the judge's following remarks:

> Have to take into consideration here the family of the child and actually of the children, because the same occurrences have been alleged with respect to a sister of the child. Both of the children are in counseling. And the particular victim in this case in which you were convicted, a seven year old victim, already having to have psychiatric counseling, there's no way to tell what effect this is gonna have on her life. How she'll—ever be able to have a normal relationship with another boy. What will her parents tell her when she begins to date? And what will be explained to her with respect to the normal sexual activities of consenting adults. And how will she be able to differentiate those matters? And what will happen to her when she's older and is confronted with her own children? These are all question marks which, in my opinion, enhance the seriousness of such a crime and are a message to me and to society that these kinds of offenses cannot be tolerated. And if they're gonna continue to take place, then they should be dealt with harshly by the courts and by the system, so that people contemplating them, if there is any way to deter those individuals, that at least the sentencing procedure would be one aspect of a deterrence.
>
> * * *
>
> In this case, the insertion of the defendant's penis in the victim's mouth; *the sexual contact with the daughter of the individual himself; the same thing happening with another victim at other times, the sister of the victim; the fact that he has had sexual contact with his own daughters; that he threatened his son with a shotgun; the fact that his son indicates that he's got a problem with drinking and his own contrary denial with respect to that, admitting that he does drink wine everyday but not on a[n] excessive basis,* merely a—I

believe it was four ounces or some amount that
would likely not be in excess; those are all factors,
except for the first one that I mentioned—the first
one I mentioned was insertion of the penis in the
mouth, that factor is taken into consideration in
the guidelines—but those other factors that I've
mentioned, *and I'll repeat 'em so that it's clear
that these are the reasons for my variance from
the guidelines. The sexual contact with his own
daughters; the sexual contact with the same victim
at other times; the sexual contact with the victim's
sister; the threatening of his son with a shotgun in
his past; and the fact that he has more of a
drinking problem than he is willing to admit and
denies that,* both in the past and present—and I'm
only talking about a past drinking problem;
there's no way for me to know currently whether
he has one or not. But from his admission in the
previous history it would appear that there's—pos-
sibly that it's there. Those are the factors that I
believe the guidelines do not take into considera-
tion and allow points for, and would require the
Court to go beyond the guidelines as they are set
forth. And for all of those reasons, then, the Court
believes that I must exceed the guidelines, which
would have a six year minimum.

Therefore, it'll be the sentence of the Court that
the dev—defendant be sentenced to the custody of
the Department of Corrections for a maximum
period of 60 years, which is set by the Court, and a
minimum period of 40 years, which is also set by
the Court. *And that the Department of Corrections
make available to him the possibility of therapy
for sexual crimes against children and that the
Court recommends to both Mr. Wesley and to the
prison system that this counseling take place.*
[Emphasis supplied.]

After reviewing the full comments made by the
sentencing judge, as well as the authorities cited
above, we would find that the trial court did not
seek an admission of guilt with the implied prom-

ise of a reduced sentence if the defendant admitted guilt, and that defendant's sentence was not improperly influenced by his failure to admit guilt as to the crime at issue. We believe that the court was merely addressing the factor of remorsefulness as it bore upon defendant's rehabilitation. Imposition of the enhanced sentence did not constitute an invalid attempt to punish defendant for exercising his constitutional right to maintain his innocence as the court expressly disavowed any such improper motivation and as the trial court could properly consider evidence in the presentence report of prior behavior.[3]

Accordingly, we would affirm the decision of the Court of Appeals.

GRIFFIN, J., concurred with ARCHER, J.

BRICKLEY, J. (*concurring*). I agree with Chief Justice RILEY that the trial judge did not rely upon the defendant's lack of remorse to support the sentence imposed, and I therefore concur in the result of this case.[1] I write separately, however, to

---

[3] Contrary to Justice BRICKLEY's opinion, we believe that use of the three-pronged test discussed at *ante,* pp 713–714 enunciates a practical distinction between consideration of a lack of remorse and a failure to admit guilt. In the instant case, we find the trial judge's concerns with regard to the defendant's failure to appreciate the detrimental effect of his sexual actions to be akin to consideration of "a defendant's callousness or indifference to the plight of the victim, *even if he continues to maintain his innocence,*" which Justice BRICKLEY acknowledges is an appropriate consideration. See concurring opinion, *post,* p 725.

Justice BRICKLEY observes that it is a "rare situation where a defendant has been wrongly convicted . . . ." If so, it would be an injustice to require a sentencing judge to impose sentence with the thought that the defendant's assertions of innocence are true and the jury's verdict of guilty, as well as other evidence, such as an unchallenged presentence report, are incorrect.

[1] Although Judge Caprathe began his remarks at sentencing by noting defendant's lack of remorse, his full explanation of the reasons for the sentence imposed demonstrates that this observation was not taken into account. The judge twice listed "the reasons for my

express my disagreement with the analysis of the "lack of remorse" issue in the lead opinion.

The opinion of Justice Archer rests on a distinction between two concepts: a defendant's continued refusal to admit his guilt and a defendant's lack of remorse. The lead opinion deems the former to be an improper sentencing consideration, while approving a court's consideration of the latter. Such a distinction is, however, illusory, since the finding that the defendant in this case was unremorseful rested solely on his continued assertions of innocence.

When sentencing the defendant, the trial judge stated:

> *Although you deny the offense, Mr. Wesley, a jury found you guilty of the offense.* There were three witnesses that testified that you did it. One of the problems here that I see as far as any kind of rehabilitation is concerned, is that you do not feel you have a problem in this area and, therefore, any kind of rehabilitation or counseling would have to be on some sort of a forced effort. Because, *if you don't believe you have a problem,* which is your position, and you have a right to take that position, the hope of recovery or rehabilitation, however one wants to put it, diminishes, in my opinion, and makes the situation a difficult situation. If you believe you don't need counseling, then it has a negative impact on any counseling that's required by the court. [Emphasis added.]

This excerpt makes clear that the sentencing judge viewed defendant's failure to admit guilt as the basis for the finding of a lack of remorse and, thus, a low likelihood of rehabilitation.

The lead opinion quotes with approval the rule from *People v Yennior,* 399 Mich 892; 282 NW2d

variance from the guidelines" and at neither time was defendant's lack of remorse included.

920 (1977), that "[a] court cannot base its sentence even in part on a defendant's refusal to admit guilt." However, the continued validity of this well-established principle is, in light of the instant decision, unclear, since, after citing *Yennior*, the lead opinion goes on to ignore it. For example, it distinguishes "defendant's failure to appreciate the detrimental effect of his sexual actions, as opposed to his failure to admit guilt." (*Ante*, 716.) However, it fails to explain how a defendant who denies that the alleged sexual actions ever took place can "appreciate" their detrimental effect. The lead opinion thus merely declares that a distinction exists between consideration of remorse and consideration of continued declarations of innocence, without explaining the distinction or how appellate courts should discern it in the future.

The lead opinion would adopt a test to determine whether a sentencing judge relied on a defendant's failure to admit guilt, *ante,* 713:

> While this Court has never specifically addressed the issue, in determining whether sentencing was improperly influenced by defendant's failure to admit guilt, the Court of Appeals has focused upon three factors: (1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe. See, e.g., *People v Gray,* 66 Mich App 101; 238 NW2d 540 (1975); *People v Grable,* 57 Mich App 184; 225 NW2d 724 (1974); *People v Fleming,* 142 Mich App 119, 127; 369 NW2d 499 (1985). Under the Court of Appeals analysis, if there is an indication of the three factors, then the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence. If, however, the record shows that the court did no more than address the factor of remorseful-

ness as it bore upon defendant's rehabilitation,
then the court's reference to a defendant's persis-
tent claim of innocence will not amount to error
requiring reversal. See, e.g., *People v Gray, supra;
People v Stubbs,* 99 Mich App 643; 298 NW2d 612
(1980); *People v Camon,* 110 Mich App 474; 313
NW2d 322 (1981), lv den 414 Mich 859 (1982);
*People v Pottruff,* 116 Mich App 367; 323 NW2d
402 (1982), lv den 414 Mich 924 (1982); *People v
Ross,* 145 Mich App 483; 378 NW2d 517 (1985).

There are a number of troubling aspects to this
excerpt. First and foremost, this Court has indeed
"addressed the issue" of the propriety of a sentenc-
ing court's consideration of a defendant's failure to
admit guilt. While our decision in *Yennior* was
peremptory, it, as quoted *supra,* addressed the
issue in no uncertain terms. In addition, by revers-
ing the Court of Appeals decision in *Yennior,* this
Court looked beyond the first two factors of the
three-part test defined by the lead opinion today,
since in that case the defendant, having made no
comment at sentencing concerning his guilt or
innocence, did not affirmatively "maintain his in-
nocence" (as required by the first factor), and the
Court of Appeals, in the decision we reversed,
explicitly held that the sentence was proper be-
cause at sentencing "the court made no attempt to
elicit an admission of guilt from defendant" (as
required by the second factor) 72 Mich App 35, 43;
248 NW2d 680 (1976).[2] Had this Court in *Yennior*

___

[2] It is also worth noting that the second factor looks only to a
sentencing judge's attempt to elicit an admission of guilt from a
defendant, but the result of this opinion is that all defendants will be
under pressure to admit guilt just as if the trial judge personally
applied the pressure. As Judge Riley stated in her dissent in *Yennior*
in the Court of Appeals:

Whether the pressure to admit guilt and show remorse flows
directly from a judge's badgering questions or obliquely from
the subtle inducement of the present decision, the evil is the
same. [*Id.* at 46.]

agreed that the first two factors urged for adoption by the lead opinion today were controlling, there would have been no need to reverse in that case.[3]

The effect of the lead opinion's position would be that sentencing judges may not impose a higher sentence on the basis of a defendant's continued refusal to admit his guilt, but may do so by finding a lack of remorse solely on the basis of that refusal. If a manageable distinction exists in such a scheme, it eludes me. The lead opinion's view merely provides a talismanic phrase by which the principles of *Yennior* may be circumvented.

I also find unconvincing the lead opinion's citation of MCL 771.14; MSA 28.1144. It is axiomatic

---

In addition, this factor begs the question, as it assumes rather than explains the existence of a workable distinction between a lack of remorse and a continued refusal to admit guilt, since it does not bar judicial pressure to "show remorse."

[3] The third factor defined by the lead opinion is also inadequate to decide the instant case since it merely states the holding of our decision in *Yennior*, i.e., that a sentence must be reversed where its length was in part based upon the defendant's failure to admit guilt. The question *now* before us is whether that situation can be distinguished from the situation where it appears that had the defendant affirmatively *shown remorse* his sentence would not have been so severe.

The remarks of the sentencing judge in *Yennior* indicate that this is an impossible task:

"It is rather difficult for the court to relate to one in your position, Mr. Yennior, where you still deny that you committed the crime of which you have been convicted. The court doesn't hold that against you. One of the things the court always seeks in determining disposition in criminal matters is the attitude of the accused with respect to whether they admit—how readily they admit they have done wrong. I can't talk to you about that because you don't admit it. That's your prerogative. I don't hold that against you, I just want to explain it, it makes it difficult." [*Id.* at 43.]

Not only did the trial judge explicitly state that he was not relying on defendant's failure to admit guilt (enough according to today's lead opinion to uphold the sentence), but his remarks make clear that remorse means "the attitude of the accused with respect to whether [and] how readily they admit they have done wrong." Thus, there is no tenable distinction between remorse and an admission of guilt.

that judges will look generally to a defendant's antecedents, character, and circumstances. The question in this case is whether a *particular* factor may be considered. In previous cases it has been determined that certain factors may not be considered, although part of a defendant's antecedents, e.g., convictions obtained in violation of the right to counsel, *People v Moore,* 391 Mich 426; 216 NW2d 770 (1974); polygraph information, *People v Towns,* 69 Mich App 475; 245 NW2d 97 (1976).

The lead opinion's reliance on the presentencing report is also unpersuasive. First, the mere presence of an improper sentencing consideration in the presentence report does not convert it into a properly considered factor. More important, however, is the fact that the presentence report contains no reference to defendant's lack of remorse. Of course, if the trial court did not rely on defendant's lack of remorse in determining sentence, as Chief Justice RILEY and I contend, we need not decide if it is a proper consideration. However, if it was relied upon, reference to proper considerations, e.g., the information in the presentence report which was also relied upon, will not cure the impropriety. *Yennior* states that "[a] court cannot base its sentence *even in part* on a defendant's refusal to admit guilt." (Emphasis added.)

This element of the lead opinion is confusing. It seems to view the trial court's reliance on other grounds for the length of the sentence as a distinction between a failure to admit guilt and a failure to show remorse. This mode of analysis can also be discerned early in the opinion where it is correctly noted that "the trial court made clear when stating its reasons for exceeding the sentencing guidelines that defendant's assertion of innocence was not the reason for imposing the harsh sentence." (*Ante,* 711.) The lead opinion fails to note, how-

ever, that a review of the trial court's remarks makes it equally clear that it also did not rely upon defendant's lack of remorse. The lead opinion, therefore, argues that the reference to defendant's lack of remorse is not improper since it was not relied upon. If it is genuinely believed that the challenged remarks of the sentencing judge were not relied upon, then it should be concluded that the propriety of those remarks need not be considered. However, once the propriety of the remarks is reached, reliance must be presumed, and the lead opinion must, as it has failed to do, enunciate a practical distinction between a reference to a lack of remorse and a reference to a failure to admit guilt.

I would, of course, allow a sentencing judge to consider those factors which fall within the rubric of remorselessness, but which exist apart from a defendant's continued assertions of innocence. For example, where a defendant admits his guilt, it is proper for the sentencing judge to consider a lack of remorse. Similarly, where a defendant admits certain facts which, while insufficient to convict, indicate wrongful action, the judge may consider defendant's lack of remorse regarding the admitted facts.[4] It would also seem appropriate to consider a defendant's callousness or indifference to the plight of the victim, even if he continues to maintain his innocence. However, nothing in the record in this case indicates that defendant's lack of remorse was anything other than a refusal to admit guilt.

In the hopefully rare situation where a defendant has been wrongly convicted, the decision in

[4] Such was, in fact, the situation in two of the cases cited by the lead opinion as examples of cases in which the Court of Appeals has been able to distinguish a refusal to admit guilt from a lack of remorse. *People v Ross,* 145 Mich App 483; 378 NW2d 517 (1985); *People v Stubbs,* 99 Mich App 643; 298 NW2d 612 (1980).

this case would compound the injustice visited upon such a defendant by further punishing him for his assertions of innocence. As stated in the Court of Appeals *Yennior* dissent:

> [I]nducing an assertedly innocent defendant to admit guilt and pressuring, albeit indirectly, a defendant to express remorse for a crime whose perpetration he denies are but two sides of the same coin. [72 Mich App 47.]

Finally, the decision urged by the lead opinion would raise a new and even more difficult question, i.e., if a defendant "shows remorse" after conviction in order to obtain a shorter sentence and later wins a retrial, may his statements at sentencing be admitted as evidence against him at his new trial? If so, defendants would, at allocution, find themselves with a Hobson's choice: to refuse to admit guilt would result in a longer sentence, but to admit guilt would destroy any hope of acquittal upon retrial. By ignoring *Yennior,* the lead opinion invites such a situation.

For all the above reasons, I disagree with the analysis of the lead opinion. However, since the trial judge stated with specificity his reasons for departing from the guidelines and the "lack of remorse" consideration was not among them, I concur in the result.

LEVIN, J., concurred with BRICKLEY, J.

CAVANAGH, J. (*concurring*). I concur in affirmance for the reason that, as stated by my Brother ARCHER, the trial court made clear that the defendant's assertion of innocence was not a factor which affected the length of the sentence imposed.

I concur separately to share my Brother BRICK-

LEY's observation that the distinction between a defendant's continued refusal to admit guilt and a lack of remorse is largely illusory. The separate opinions issued in this case attest to the difficulty presented in attempting to differentiate between them. I would not attempt to do so because reality and common sense require the sentencing judge to act upon the basis of the central presumption that the defendant *is* guilty. Following a plea of guilty or a trial, a convicted defendant stands before the sentencing judge no longer clothed with the presumption of innocence. While a defendant is certainly free to continue to assert innocence, a sentencing judge should not be required to tip-toe through the metaphysical distinctions required to separate that continued assertion from a lack of remorse.

To discharge the awesome responsibility of sentencing a defendant to a substantial loss of liberty, a sentencing judge surely must begin with an honest belief that the defendant is in fact guilty. Given the acceptance of defendant's guilt as a premise, the sentencing judge's perception of the defendant's truthfulness (lack of credibility) or lack of remorse (refusal to acknowledge guilt) is, to a certain degree, predetermined. The logic is sophistic which would require that this perception merely be unstated on the record.

BOYLE, J., concurred with CAVANAGH, J.

RILEY, C.J. (*concurring*). I am in agreement with the lead opinion that, in exceeding the sentencing guidelines, the trial court did not rely upon the defendant's "assertion of innocence" or lack of remorse for the offense of which he was convicted. Rather, as indicated in the lead opinion, the trial court relied upon the information contained in the

presentence report and the defendant's failure to object to the use of that information for imposing the admittedly harsh sentence in this case. In light of the above, it is unnecessary to decide whether the lack of remorse, inferred from the defendant's refusal to admit guilt of the crime of which he was convicted, may properly have been relied upon to increase the defendant's sentence.

The defendant's proclivity toward rehabilitation was an appropriate factor to be considered by the sentencing court. Whether the defendant's failure to express remorse while refusing to admit guilt of the offense of which he was convicted may properly be viewed as a factor negating his potential for reformation is a question that need not be decided in the case at bar. I would hold that the trial court did not abuse its discretion in relying upon the information in the presentence report to increase the defendant's sentence on the basis of his potential for rehabilitation. Thus, I concur in the decision to affirm.