*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID ALLEN MILLER,

Defendant-Appellant.

UNPUBLISHED
April 16, 2020

No. 345990
Ingham Circuit Court
LC No. 18-000146-FH

Before: CAVANAGH, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of first-degree home invasion, MCL 750.110a(2), unarmed robbery, MCL 750.530, and assault with intent to do great bodily harm less than murder, MCL 750.84, for forcing his way into the home of his elderly neighbor, where he beat and robbed her. The court sentenced defendant as a fourth habitual offender, MCL 769.12, to 216 to 480 months' imprisonment for his higher-level offenses of home invasion and unarmed robbery convictions, but to 240 to 480 months' imprisonment for the lesser-level offense of assault. Defendant challenges his sentences, asserting that the court erroneously found that he showed no remorse for his acts and therefore imposed disproportionate sentences. There is a larger concern in this case, however. The trial court imposed an upwardly departing sentence for defendant's assault conviction without recognizing or acknowledging it. Accordingly, we must vacate the assault sentence and remand for resentencing in that regard. However, we affirm defendant's convictions and his sentences for home invasion and unarmed robbery.

## I. BACKGROUND

At trial, defendant vigorously denied that he entered his neighbor's home and attacked her. He presented an alibi defense and contended that the victim confused him with his brother, the true perpetrator. After the jury convicted him as charged, defendant changed his tune. When interviewed by the probation agent preparing his presentence information report (PSIR), defendant described that leading up to the robbery, "he had used methamphetamines, crack cocaine and had consumed alcohol and had not slept in four days." He went to the victim's home with the intent of stealing money to purchase more drugs. Although defendant could not remember all the details

-1-

of the assault, he admitted that he pushed the victim down and "began hitting her." Defendant told the agent that he had known the victim for a long time, they previously had a good relationship, and he was "sorry for what he did to" her.

At sentencing, defense counsel argued that defendant "had a 'Come to Jesus' moment to [sic] where he admitted to all the things that he had actually done to the victim." Counsel asserted that defendant was "very remorseful for what happened." Defendant spoke at the sentencing as well, admitting what he had done and explaining that he would not have acted that way if he was sober. He apologized to his family for the trouble and pain he had caused. And defendant hoped that "one day" the victim could forgive him. But defendant blamed his behavior on his intoxication.

The court opined that defendant's statement "sounded good on the surface," but was "the most deficient apology [it had] ever heard." The court noted that defendant refused to admit his guilt before trial, forcing the witness to testify against him. Defendant then took the stand, perjured himself, and called the victim "a liar." The court found defendant's conduct "inexcusable."

In imposing sentence, the court asserted, "I have considered the sentencing guidelines. I will stay within them." For defendant's home invasion conviction, the court imposed a sentence of 216 to 480 months' imprisonment. The court imposed the same sentence for defendant's unarmed robbery conviction. For the assault conviction, the court sentenced defendant to 240 to 480 months' imprisonment. The court ordered that the sentences run concurrently.

## II. ANALYSIS

We discern no error in the trial court's reliance on defendant's lack of remorse in setting defendant's sentences. "A court cannot base its sentence even in part on a defendant's refusal to admit guilt," *People v Yennior*, 399 Mich 892; 282 NW2d 920 (1977), but it may consider a defendant's lack of remorse. *People v Houston,* 448 Mich 312, 323; 532 NW2d 508 (1995). To determine whether the trial court's sentencing decision was improperly influenced by the defendant's failure to admit guilt, we must consider: "(1) the defendant's maintenance of innocence after conviction, (2) the judge's attempt to get the defendant to admit guilt, and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). Resentencing is required when it is apparent that the trial court erroneously considered the defendant's failure to admit guilt, as evidenced by asking defendant to admit his guilt or by offering a defendant a lesser sentence. *Id*. at 716.

The court was able to observe defendant first-hand through trial and at sentencing and deemed his apology "deficient." We may not second-guess that credibility determination based on the impersonal written record of these proceedings. See MCR 2.613(C) ("[R]egard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it."). Moreover, defendant maintained his innocence until after his conviction, there is no record indication that the court ever attempted to convince defendant to admit his guilt, and the court never implied that it would impose a lesser sentence in exchange for an admission of guilt. Accordingly, the trial court did not err in considering defendant's lack of remorse when imposing sentence.

Defendant's within-guideline sentences for home invasion and unarmed robbery are presumptively proportionate and we therefore affirm those sentences. See *People v Odom*, 327 Mich App 297, 315; 933 NW2d 719 (2019). However, the court may have imposed a disproportionate sentence for defendant's lower level assault conviction by imposing an upwardly departing sentence without recognizing it was doing so.

Pursuant to standard operating procedures, the probation agent preparing defendant's PSIR also prepared a sentencing information report (SIR) for defendant's primary offense. The agent assessed points for the prior record and offense variables. Defendant's Total PRV Score of 115 points placed him in PRV Level F and his Total OV Score of 56 placed him in OV Level V. As a fourth habitual offender, defendant's minimum sentencing guidelines range for his Class B home invasion conviction, MCL 777.16f, was 99 to 320 months and 58 to 228 months for his Class C unarmed robbery conviction, MCL 777.16y. Defendant's minimum sentences of 216 months for these offenses falls within those ranges.

The same cannot be said about defendant's assault sentence. Assault with intent to commit great bodily harm less than murder in violation of MCL 750.84 is a Class D offense against a person. MCL 777.16d. The minimum sentencing range for a fourth habitual offender in cell V-F for a Class D offense is 38 to 152 months. Defendant's minimum sentence of 240 months for his assault conviction far exceeds that range. Yet, the trial court indicated that it imposed sentences within the appropriate sentencing guidelines ranges.

The trial court was required to score defendant's offense and prior record variables only for his highest-class offense. See *People v Lopez*, 305 Mich App 686, 690; 854 NW2d 205 (2014), citing *People v Mack*, 265 Mich App 122; 695 NW2d 342 (2005). As we explained in *Lopez*, 305 Mich App at 691-692:

> The *Mack* Court reasoned that, when sentencing on multiple concurrent convictions, the guidelines did not need to be scored for the lower-crime-class offenses because MCL 771.14(2)(e) provides that presentence reports and guidelines calculations were only required "for the highest crime class felony conviction." *Id*. at 127-128, citing MCL 771.14(2)(e). The rationale for this legislative scheme is fairly clear because, except in possibly an extreme and tortured case, the guidelines range for the conviction with the highest crime classification will be greater than the guidelines range for any other offense. Given that the sentences are to be served concurrently, the guidelines range for the highest-crime-class offense would subsume the guidelines range for lower-crime-class offenses, and there would be no tangible reason or benefit in establishing guidelines ranges for the lower-crime-class offenses. Therefore, because the sentences for defendant's lower-crime-class offenses were to be served concurrently with the highest-class-felony sentence, the [lower level] guidelines did not need to be scored and there was no departure.

But in this case, the court imposed a higher sentence for the lowest-level offense. *Lopez* and *Mack* recognized the problematic nature of this situation: "[W]e also question, like the *Mack* Court did, 'whether a sentence for a conviction of the lesser class felony that is not scored under

the guidelines pursuant to [MCL 771.14(2)(e)(*ii*) and (*iii*)] could permissibly exceed the sentence imposed on the highest crime class felony and remain proportional.' *Mack*, 265 Mich App at 129." *Lopez*, 305 Mich App at 692. In *Lopez*, the "defendant's sentences for his lower-crime-class felonies did not exceed those imposed for his highest-crime-class felonies," and this Court was not required to "decide that question." The problem is not hypothetical in this case, however, and we must address it.

Although the correct minimum sentencing guidelines range for the assault conviction was subsumed by the minimum sentencing guidelines range for home invasion, the trial court imposed a minimum sentence for assault far in excess of the assault guidelines range and two years longer than the minimum sentences for the higher-level offenses. The legislative purposes were not met in this case; the court departed upward from the sentencing guidelines, seemingly unawares.

We must review departure sentences for reasonableness. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). To that end, the "trial court must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been. . . ." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted). Ultimately, the court must articulate on the record why it is departing from the sentencing guidelines and why the particular sentence imposed is more proportionate than the guidelines recommended sentence.

As the trial court did not realize that it departed from the sentencing guidelines when it imposed the sentence for defendant's assault conviction, it made no attempt to justify that sentence on the record. We therefore must vacate defendant's sentence for assault and remand for resentencing.

We affirm defendant's convictions for all three offenses and his sentences for home invasion and unarmed robbery, but vacate his sentence for assault with intent to commit great bodily harm less than murder and remand for resentencing. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Elizabeth L. Gleicher

-4-