# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 19, 2018

Plaintiff-Appellee,

v

No. 337160
Eaton Circuit Court
LC No. 16-020023-FC

ANTHONY MICHAEL GOMEZ,

Defendant-Appellant.

Before: O'BRIEN, P.J., and CAVANAGH and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right, challenging his sentence of 25 to 50 years' imprisonment for his jury conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b) (penetration with a victim at least 13 but less than 16 years of age and defendant is a member of the same household as the victim). We affirm.

This case arises from defendant's sexual assault on his girlfriend's 13-year-old daughter. The victim's mother and defendant had been together since March 2005, when the victim was only three years old. The victim had lived with her mother and defendant as long as she could remember. The victim's mother and defendant had one child together. They had lived in California, but three to four years before the assault, they moved to Michigan. They lived in a two-bedroom apartment, and the victim used the living room as her bedroom.

On the night of the assault, they went to the house of a relative of the victim's mother to watch a football game. Defendant drank three to four beers and smoked marijuana during the game. They returned to the apartment, and defendant and the victim's mother went to their bedroom. The victim later went to the bedroom to ask for a DVD. Her mother was asleep, but defendant was awake. When the victim returned to the living room, she knelt down on the floor to reach for her laptop that she kept under her bed. Suddenly, defendant came up behind her while she was kneeling down, pushed her face into a towel or a piece of cloth that was on the floor, and pinned one of her wrists behind her back. When he removed her pajama bottoms and underwear, he let go of her wrist, but put greater pressure on her head. He penetrated her vagina with his penis, making a back-and-forth motion with his pelvis, keeping one hand pressed down on her head, and pinning her wrist with his other hand. The victim estimated that the assault lasted about five minutes. She tried to scream, but it seemed like she could not be heard with her face pressed into a cloth. The victim recalled that during the assault, she wanted to die so that

the assault would be over. When defendant finished, he took his penis out of her vagina and put his clothes on. He told the victim that they were done and to grab her clothes and take a shower. As she got up from the floor, she saw a pornographic video playing on defendant's cell phone that was propped up nearby. She grabbed her clothes and headed to the bathroom. She got into the shower and let the water run over her for about three to five minutes while she cried.

The next morning, the victim told her mother about the sexual assault and the victim was taken to a medical facility where she was examined by a sexual assault nurse examiner (SANE). Injuries consistent with sexual assault were evident and forensic specimens were collected. DNA evidence substantiated that defendant's DNA was found on or in the victim's body. Eight days later, the victim was examined by Dr. Stephen Guertin, the medical director of Sparrow Children's Center and the physician member of the Child Safety Program for evaluating potential child abuse victims. After his examination and evaluation, he concluded that the victim presented in a way consistent with that of a child who was sexually abused.

On appeal, defendant argues that the admission of Dr. Guertin's hearsay testimony was erroneous because the victim's statements to him were not for the purpose of medical treatment as required under MRE 803(4). We disagree.

Because defendant did not object to Dr. Guertin's testimony at trial, this issue is unpreserved. See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Accordingly, we review defendant's claim of evidentiary error under the plain error standard. *People v Houston*, 261 Mich App 463, 466; 683 NW2d 192 (2004). "To warrant reversal, defendant must establish that the plain error affected his substantial rights, meaning that the error was outcome-determinative." *Id*.

Hearsay statements—which are out-of-court statements offered to prove the truth of the matter asserted—are not admissible unless an exception is provided by the Michigan Rules of Evidence. MRE 801(c), 802. MRE 803(4) provides an exception for statements made for the purpose of medical treatment or diagnosis. Such statements are "admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). "This is true irrespective of whether the declarant sustained any immediately apparent physical injury." *Id*. at 215. "Particularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id*.

In this case, Dr. Guertin testified that the purpose of his examination of the victim was to determine whether the diagnosis of sexual assault was warranted and to determine potential treatments for the victim. He examined the victim to look for signs of injury and sexually transmitted disease, ensured that the victim would receive counseling in California when she moved there to live with her father, and informed the victim that she would need to be tested for HIV four to six months later. It is clear, then, that the victim's statements to Dr. Guertin were made for the purpose of medical treatment because they were reasonably necessary to confirm the diagnosis of sexual assault and to determine the proper treatment. See MRE 803(4). Thus,

the victim's "recitation of the totality of the circumstances of the assault" were "properly considered to be statements made for medical treatment." See *Mahone*, 294 Mich App at 215.

Moreover, "[t]he admission of a hearsay statement that is cumulative to in-court testimony by the declarant can be harmless error, particularly when corroborated by other evidence." *People v Duenaz*, 306 Mich App 85, 97; 854 NW2d 531 (2014) (quotation marks, alterations, and citation omitted). In this case, the victim identified defendant as her assailant and was subject to cross-examination. Further, there was no objection when the SANE nurse testified that, when she examined the victim, the victim identified defendant as the assailant. Additionally, the identification of defendant was corroborated by the DNA evidence. Accordingly, we conclude that the trial court did not err in admitting Dr. Guertin's testimony. Furthermore, any identification testimony was cumulative and the admission would not be outcome-determinative. See *id.*; *Houston*, 261 Mich App at 466.

Defendant next argues that the trial court erred in assessing 50 points for offense variable (OV) 7 because defendant did not engage in conduct beyond the minimum required to commit the sexual assault. We disagree.

When reviewing a challenge under the sentencing guidelines, "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A factual finding is clearly erroneous if it either lacks substantial evidence to sustain it, or if the reviewing court is left with the definite and firm conviction that the trial court made a mistake." *People v Mazur*, 497 Mich 302, 308; 872 NW2d 201 (2015). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

Former MCL 777.37(1)(a), outlining OV 7 for aggravated physical abuse for offenses committed before January 5, 2016, which applies to defendant's conviction, instructed the trial court to assess 50 points if the "victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." In *Hardy*, 494 Mich at 443, our Supreme Court concluded, in interpreting former MCL 777.37(1)(a), that the trial court could consider conduct inherently present in the crime when scoring OV 7, and that the defendant's conduct did not need to be similarly egregious to sadism, torture, or excessive brutality for the trial court to assess 50 points for OV 7. The Court stated that "[t]he relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id.* at 443-444. To determine a "baseline for the amount of fear and anxiety experienced by a victim of the type of crime or crimes at issue," the trial "court should consider the severity of the crime, the elements of the offense, and the different ways in which those elements can be satisfied," to then "determine, to the extent practicable, the fear or anxiety associated with the minimum conduct necessary to commit the offense." *Id.* at 442-443 (citations omitted).

In this case, the prosecution clearly laid out how defendant's conduct went beyond the minimum required to commit the offense. The elements of CSC-I are that the victim be at least 13 and less than 16 years old, that the defendant share a household with the victim, and that the

victim suffer penetration. MCL 750.520b(1)(b). Defendant could have committed the offense even if the victim consented to sexual intercourse. See *id*. Therefore, defendant's acts of pinning the victim's wrist behind her back and pushing her face into a pillow or piece of cloth rose above the conduct necessary to complete the offense. See *Hardy*, 494 Mich at 443-444.

Further, it is more probable than not that defendant's conduct was intended to increase the victim's fear or anxiety by a considerable amount. See *id*. at 443. Defendant argues that he had to restrain the victim to accomplish the assault and cover her mouth so that the assault would not wake up anyone else in the apartment. However, defendant—who was a father figure to the victim for about 10 years—attacked the unsuspecting victim from behind, restrained her arms, pulled her pajama bottoms and underwear off, and shoved her face into a cloth on the floor so hard that her screams for help could not be heard. The surprise and brutal nature of the attack, as well as the use of significant force during the attack sufficiently demonstrate that defendant intended to increase the victim's fear or anxiety by a considerable amount. Accordingly, the trial court properly scored OV 7 at 50 points.

Finally, defendant argues that his above-guidelines sentence is not proportional or reasonable and was improperly based on his failure to admit guilt. We disagree.

We review for reasonableness a trial court's upward departure from a defendant's calculated guidelines range. *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a sentence for reasonableness, the proper inquiry is whether the trial court abused its discretion by imposing a sentence that violates the principle of proportionality, i.e., a sentence that is not " ' proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).

Factors that may be considered under the proportionality standard include (1) the seriousness of the offense, (2) factors inadequately considered by the guidelines, and (3) factors not considered by the guidelines, including the relationship between the defendant and the victim, the defendant's remorse, and the defendant's potential for rehabilitation. *People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (citation omitted). "[W]hile a sentencing court cannot, in whole or in part, base its sentence on a defendant's refusal to admit guilt, evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *People v Wesley*, 428 Mich 708, 711; 411 NW2d 159 (1987) (citation omitted). This Court "look[s] to three factors to determine if a sentencing court improperly considered a defendant's refusal to admit guilt: '(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe.' " *People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009), quoting *Wesley*, 428 Mich at 713.

In *Wesley*, the defendant was charged with CSC-I against a seven-year-old victim, and although defendant maintained the criminal act had not occurred, a jury convicted him. *Wesley*, 428 Mich at 711. Despite the guidelines range suggesting a minimum sentence of three to six years, the trial court sentenced the defendant to 40 to 60 years in prison. *Id*. The trial court based its sentence on the fact that the jury had already found him guilty and, if defendant did not

recognize that he had a problem in his interactions with young children, the success of rehabilitation would be unlikely, and the threat to society would be great. *Id*. at 712. The Michigan Supreme Court found that the trial court did not abuse its discretion when imposing a minimum sentence that greatly exceeded the guidelines range because the trial court focused on "the defendant's failure to appreciate the detrimental effect of his sexual actions, as opposed to his failure to admit guilt." *Id*. at 716.

Similarly, in this case, the trial court did not improperly consider defendant's refusal to admit his guilt. See *Payne*, 285 Mich App at 194. The prosecution had requested the court to impose an above-guidelines sentence for several reasons, including (1) that defendant had a prior conviction for having sexual intercourse with a 14-year-old child in California, (2) the victim in this case was less than a month past her thirteenth birthday and if defendant had assaulted her a few weeks earlier, his mandatory minimum sentence would have been 25 years' imprisonment, (3) the elements for the CSC-I conviction would have been satisfied even if no force had been used, and (4) defendant was a father figure to the victim and she would likely struggle with the emotional effects of the assault for years. During his allocution, defendant claimed that the victim had lied in several instances separate from the assault accusation, that the victim planted his semen in her vagina as evidence, that both the victim and the victim's mother abused him, and that there was computer evidence showing that the victim fabricated her accusation which was not presented at trial.

In rendering its sentence, the trial court concluded that defendant's rehabilitation potential was limited, considering that he had previously had sexual intercourse with a 14-year-old girl when he lived in California, and that society needed to be protected. In other words, as in *Wesley*, defendant did not appreciate the detrimental effect of his actions. See *Wesley*, 428 Mich at 712. The court further noted the heinous nature of the crime, including that defendant was a father figure to the victim, and that the victim would never be the same. The court also recognized that the recommended sentencing guidelines range would be the same whether the victim had consented to sexual intercourse or defendant forced himself upon the victim, and in this case, defendant used force to penetrate the victim therefore a higher sentence reflected the seriousness of defendant's crime. See *Steanhouse*, 500 Mich at 475. While the court did reference the fact that defendant expressed no remorse during his 14-minute allocution, "evidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *Wesley*, 428 Mich at 711. And while defendant maintained his innocence after conviction, the trial court neither attempted to get defendant to admit his guilt nor implied that, if defendant had admitted his guilt, his sentence would not have been so severe. See *Payne*, 285 Mich App at 194.

In summary, the above-guidelines sentence imposed by the trial court was not improperly

based on defendant's failure to admit guilt and is proportionate to the seriousness of the circumstances surrounding the offense and the offender. See *Steanhouse*, 500 Mich at 459-460.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens