*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

REBECCA LYNN ATTARD,

        Defendant-Appellant.

UNPUBLISHED
April 30, 2019

No. 342177
Wayne Circuit Court
LC No. 17-004386-01-FH

Before: TUKEL, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Rebecca Attard, appeals as of right her jury trial convictions of operating while intoxicated (OWI), third offense, MCL 257.625(1) and (9), and operating with a suspended license (OWSL), MCL 257.904. Attard was sentenced to three to five years' imprisonment for the OWI conviction and nine days in jail for the OWSL conviction. Because there are no errors warranting reversal, we affirm.

## I. BASIC FACTS

On May 4, 2017, the Riverview Police received a call about a disabled vehicle in the roadway near the intersection of Fort Street and Pennsylvania. The responding officers spoke with two men. The witnesses explained that Attard had been in the driver's seat of the vehicle when they first saw it. They asked her if she needed assistance and then pulled into a nearby gas station to render aid. From the gas station parking lot, they observed Attard get out of her vehicle, retrieve a bag from the back seat, and then remove the vehicle's license plate. Attard went behind the gas station, where she got into another vehicle. The driver of that vehicle testified that she had stopped to help Attard and Attard had asked her for a ride to a store. She initially agreed, but when Attard got in the back seat of the woman's vehicle, the woman detected the odor of intoxicants and asked her to get out. She stated that once Attard exited the vehicle, she saw her "running" behind the gas station. The two men also observed Attard leaving the area, and when the police arrived, they directed the officers' attention to Attard.

One of the officers ran after her and directed her to stop. The officer testified that he could detect a strong odor of intoxicants coming from Attard. He stated that she told him that she had been driving the disabled vehicle when the transmission went out. She also stated that she took the license plate from her vehicle because "she really liked the plate and didn't wanna lose it." The officer asked her to perform a number of field sobriety tests, most of which she was unable to complete successfully. Thereafter, she was placed under arrest. The officer located Attard's license plate in her bag, and the keys to the disabled vehicle were in Attard's pocket. At the police station, it was determined that Attard's blood alcohol content (BAC) was 0.19.

At trial, Attard did not dispute that she was intoxicated. Instead, she argued that no one testified that they saw her driving the vehicle, so the prosecution could not prove beyond a reasonable doubt that she operated her vehicle while intoxicated.

## II. JUDICIAL MISCONDUCT

### A. STANDARD OF REVIEW

Attard argues that a new trial is required because the trial court's comments before and during the trial pierced the veil of judicial impartiality and denied her a fair trial. "The question whether judicial misconduct denied defendant a fair trial is a question of constitutional law that this Court reviews de novo." *People v Stevens*, 498 Mich 162, 168; 869 NW2d 233 (2015). However, Attard did not object to the trial court's conduct at trial, leaving this issue unpreserved. See *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

### B. ANALYSIS

When claiming judicial bias, a defendant must overcome "a heavy presumption of judicial impartiality." *People v Jackson*, 292 Mich App 583, 598; 808 NW2d 541 (2011) (quotation marks and citation omitted). A judge's conduct pierces the veil of judicial impartiality "and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party." *Stevens*, 498 Mich at 171.

Attard first argues that the court was biased against her because, before voir dire, the court commented:

> I don't know if Ms. Attard is—has belief in miracles, but I mean there's always a possibility I guess she could win this case.

> But, Ms. Attard, I, I don't know what sort of rabbit you expect your lawyer to pull out of a hat here. I'm sort of familiar with the evidence that's against you.

In context, these comments do not show judicial bias against Attard. Before making the above remarks, the court confirmed the details of a plea agreement that Attard had rejected. And, after making the remarks, the court asked, "Are you sure you wanna go to trial?" Therefore, it is clear that the judge was simply giving Attard another opportunity to accept the plea as opposed to going to trial. Furthermore, the judge's comment was made outside the presence of the potential jurors, so even if the remarks were improper they could not have actually influenced the jury. See *id*.

Next, Attard argues that the judge demonstrated his bias against her during closing argument. Attard's lawyer argued to the jury:

> And Ms. Attard hasn't testified. She could testify, she could not testify. She chose not to testify. And the instructions say you can't hold that against her.
>
> But, you know, what—there is some reasons why a person may not wanna testify in a case. Because when you get on the witness stand, the, the prosecutor, they can ask you anything about anybody, and you have to answer it truthfully.
>
> So if there's somebody else driving that vehicle, she would have to point out who they were.

The prosecution objected, and the court sustained the objection, noting that it was not proper for Attard's lawyer "to speculate about what she may have said" if she had testified. Attard's lawyer then stated—incorrectly—that if a person testified that person would have to answer "every question that's put before them." The court interjected that the lawyer's statement was "not true," and then clarified that objections to a question might be sustained, so the witness would not have to answer the question. Attard's lawyer continued his argument that before testifying a witness would have to consider that they were going to be asked a lot of questions, some of which the witness might not want to answer. The prosecutor objected again, contending that Attard's lawyer was attempting to "back door in information" that had not been put into evidence. The court agreed and told Attard's lawyer that he could not "talk to the jury about why somebody might not testify because then that does back door in that which you think she may have testified to, but she didn't testify." The court then told him to "move on" because it was an improper argument. When Attard's lawyer continued to argue the objection, the court stated: "Just move on. Don't argue with me either. Just move on."

Attard contends that the judge's decision to rebuke her lawyer when he was making a legitimate argument based on her right not to testify denied her a fair trial. However, viewed in context, it is clear that Attard's lawyer was making an improper argument by asserting that one reason that a witness—specifically Attard—might choose not to testify is because she would be forced to implicate someone else as the driver of the disabled vehicle. Given that Attard chose not to testify, it was improper for her lawyer to speculate on exculpatory statements that she could have made if she had testified. The court's appropriate rulings on this issue, therefore, have not deprived her of her right to a fair trial, and Attard cannot demonstrate that a plain error affecting her substantial rights occurred.

-3-

## III.  SENTENCE

### A.  STANDARD OF REVIEW

Attard next argues that she is entitled to resentencing because the sentence imposed is disproportionate and unreasonable.  "[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017).  A sentence is unreasonable—and therefore an abuse of discretion—if the trial court failed to adhere to the principle of proportionality in imposing its sentence on a defendant.  *Id*. at 477, citing *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990).  In other words, sentences imposed by a trial court must be "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636.

### B.  ANALYSIS

When imposing a sentence, the trial court must consult and account for the sentencing guidelines, which, though advisory, " 'remain a highly relevant consideration in a trial court's exercise of sentencing discretion.' " *Steanhouse*, 500 Mich at 474-475, quoting *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015).  Here, Attard's recommended minimum sentence under the legislative sentencing guidelines was 0 to 9 months, but the court imposed a three to five year sentence.  However, in determining whether a sentence adheres to the principle of proportionality, " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 472, quoting *Milbourn*, 435 Mich at 661.  A sentence is not presumed disproportionate, i.e., unreasonable, simply because it deviates from the guidelines range. *Steanhouse*, 500 Mich at 474.

When fashioning a proportionate sentence, a court may consider the following non-exclusive factors:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation.  [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015), aff'd in part and rev'd in part on other grounds 500 Mich 453 (2017) (citations omitted).]

Additionally, when imposing a sentence that deviates from the guidelines, the court "must explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017), citing *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008).

Attard argues that the circumstances surrounding the offense warranted a shorter sentence.  She notes that there was no evidence that she was driving erratically or was posing a threat to anyone.  She also credits herself with having the wherewithal to turn on her hazard

lights when her vehicle became inoperable. She ignores, however, evidence supporting the court's determination that this was a serious offense with unique circumstances. Attard's vehicle was in the center of a busy street, at rush hour, near an intersection. The speed limit in the area was 45 miles per hour. Witnesses observed Attard in the driver's seat before she then exited the vehicle, took a bag from the back seat, removed the vehicle's license plate, and then attempted to flee the area. Given her elaborate efforts to leave the scene without being identified as the driver of the vehicle, we discern no abuse of discretion in the court's decision to focus on the concentrated efforts Attard made to avoid the consequences of drinking and driving as opposed to the fact that no one was directly hurt as a result of her actions.

Attard also argues that she is not the type of offender that requires a three to five year sentence. On appeal, she sums herself up as "[a] college-educated teacher with an alcohol problem." She also notes that, although this is her third OWI, there is a 15 year gap between the first offense and the second offense. She stresses that, although she has four prior misdemeanors, they do not justify the imposition of such a severe sentence. Yet, besides recognizing that this was Attard's third OWI, the court was not concerned with the time between the *first* and the *second* offense. Instead, the court focused on the fact that Attard was on probation for OWI when she committed the instant offense, stating "I don't know how else to handle an offender like this who commits a crime such as this while she's on probation for committing the very same crime." While the fact that she was on probation for a misdemeanor at the time of the offense generally is accounted for by the guidelines, see prior record variable (PRV) 6, MCL 777.56(1)(d), and was scored under that PRV, it was not also scored under PRV 5 because it was used to enhance the previous misdemeanor to the instant felony. See MCL 777.55(2)(a)-(b). Nevertheless, the guidelines in general and PRV 6 in particular do not take into account the fact that the offense was the same offense as the present offense. That circumstance, unaccounted for in the guidelines, was further buttressed by the court's finding that Attard had lost her job as a result of the second OWI, but that she still persisted in driving. The court considered Attard's potential for rehabilitation at the same time, noting that the prior imposition of probation and restrictions on driving had been ineffective to prevent the instant offense. The court reasoned that the need to protect the public was another reason to justify a longer sentence. In light of the trial court's careful evaluation of the circumstances surrounding the offense and the offender, we conclude that the trial court did not abuse its discretion by imposing a three to five year sentence.

### III. ASSERTION OF RIGHT TO TRIAL

#### A. STANDARD OF REVIEW

Next, Attard asserts that the court led her to believe that she would not be punished for insisting on a trial as opposed to accepting a plea deal. Because this issue was not raised before the trial court, it is unpreserved and our review is for plain error affecting Attard's substantial rights. See *Carines*, 460 Mich at 763-764.

#### B. ANALYSIS

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant a right to a jury trial. US Const, AM VI; Const 1963, art I, § 20. Furthermore, "[a]

defendant's Fifth Amendment right against self-incrimination is fulfilled only when a criminal defendant is guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." *People v Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006) (quotation marks and citation omitted). A sentencing court may not base its sentencing decision on a defendant's refusal to admit guilt. *People v Wesley*, 428 Mich 708, 711; 411 NW2d 159 (1987); see also *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007) ("A sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt."). This Court considers three factors when determining whether a sentencing court improperly considered a defendant's refusal to admit guilt: "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his [or her] sentence would not have been so severe." *People v Payne*, 285 Mich App 181, 194; 774 NW2d 714 (2009) (quotation marks and citation omitted). Resentencing is not warranted when "nothing in the record suggests that the trial court would have been more lenient had defendant admitted guilt." *Id*.

Attard contends that the trial court gave her a more severe sentence because she insisted on going to trial and did not admit guilt. In support, she directs our attention to the court's statements before trial suggesting that Attard must believe in miracles or expect her lawyer to perform a magic trick if she expected to be acquitted. The court noted that it was familiar with the evidence against Attard and then asked her if she was sure she wanted to proceed to trial. Attard stated that she wanted a trial. Nothing in the above exchange suggests that if Attard refused to plead guilty the court would impose a higher sentence as punishment for that decision. Instead, the court's comments, viewed in context, indicated that even though it was the date and time set for trial the court would still consider accepting a plea if that was what Attard elected to do. In addition, there is nothing in the sentencing record suggesting that the court was punishing Attard for insisting on a trial instead of admitting guilt. Instead, as was discussed above, the court based its sentencing decision on a number of facts about the offense and the offender that were unrelated to her decision to proceed to trial.

Finally, to the extent that Attard complains that the court led her to believe she would not receive a higher sentence if she refused the plea offer and proceeded to trial, we find that her contention is refuted by the record. At a final conference, Attard admitted that she was advised that "the penalty for the offense could be greater at sentencing in the event of a guilty verdict." She was specifically informed that the statute allowed for a sentence from one to five years in prison, but that it could also be 30 days to a year in jail. Attard stated that, knowing those facts, she wanted to go to trial and reject the plea offer. The court then stated:

> And, Ms. Attard, I just want you to be able to indicate here on the record you understand the offer that has been made. Certainly you would not be punished by going to trial. I don't want you to think that for a minute.
>
> But as your attorney indicated, the offense with which you are charged, if you were convicted, there are certain mandatory sanctions to be imposed.
>
> A prison reference that was made that is a minimum. *If I decide to send you to prison, I have to send you for at least a year.* If you were to be placed on

probation, I have to send you to the Wayne County Jail for at least 30 days up to a year in terms of a probationary sentence.

And am I correct in understanding that you wish to go to trial? Is that correct?

Attard stated that she wanted to go to trial. Given that the court informed her that *if* the court decided to impose a prison sentence, she would receive *at least* a year, we are unpersuaded by Attard's claims that she was misled by the court into believing that she would not receive a greater sentence if she went to trial.

Affirmed.

/s/ Jonathan Tukel
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly