*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MESSENGER, Minor,

UNPUBLISHED
May 25, 2023

No. 360318
Wayne Circuit Court
Family Division
LC No. 2021-000551-DJ

Before: M J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

PER CURIAM.

Respondent pleaded *nolo contendere* to assault with intent to murder (AWIM), MCL 750.83, discharge of a weapon from a vehicle, MCL 750.234a(1)(a), and carrying a concealed weapon, MCL 750.227. The trial court sentenced him to serve concurrent terms of imprisonment of 15 to 25 years for the AWIM conviction, and 1 to 5 years for each weapons conviction. Respondent was 16 years old on the date of the incident, but was given an adult designation. The trial court eschewed alternatives available for a blended juvenile sentence and instead committed respondent directly to the Department of Corrections (DOC). Respondent appeals by right. We affirm.

## I. FACTS

According to the criminal complaint, and other documentation available to the trial court, on the night of June 18, 2021, the victim, then 15 years old, was standing outside his home in Inkster with several other young people. Respondent and another person came upon the scene in a vehicle, and several gunshots emerged from it. The victim was struck in the chest and taken to the hospital in critical condition.

Police officers questioned witnesses, recovered shell casings, and gathered exterior video from nearby residences. Additionally, police also executed a search warrant on respondent's home and found a handgun and ammunition consistent with the casings retrieved from the crime scene. Respondent was charged with five counts of AWIM, one count of firearm discharge from a vehicle, one count of carrying a concealed weapon (CCW), and six counts of possession of a firearm during the commission of a felony, MCL 750.227b. He refused to identify anyone else who was involved.

On October 4, 2021, respondent pled no contest to one count of AWIM, one count of firearm discharge from a vehicle, and one count of CCW, in exchange for dismissal of the other ten charges. The trial court explained in detail that respondent had been given an adult designation and that his sentence could be delayed and blended with juvenile probation, or he could serve a sentence of imprisonment with the DOC. Respondent stated that he understood, and he answered correctly when the trial court challenged him to explain back to the court the two sentencing possibilities he faced.

Respondent's first sentencing hearing was held on November 15, 2021. A Presentence Investigation Report (PSIR) had not yet been prepared because the court had not yet decided whether respondent would be committed directly to the DOC. The trial court did have access to a "Designated Case Pre-Sentencing Report," and a detailed "Juvenile Assessment Summary Disposition Report." Respondent offered no statement when given a chance for allocution. The trial court referred to his silence when explaining the sentence, including that the court had heard "a lot from the victim's family" but not "much from the offender." The court also stated as follows:

> And when afforded an opportunity to say anything, you opted not to say anything. You're not required to. But some level of remorse has never hurt anybody, if you're sincerely sorry. Obviously if you're not then why apologize[?]

Finally, the court stated, "I heard the statements. [Respondent] didn't have anything to say." The court described respondent's background as not terrible, but not perfect, with "some things that saddened me to some degree." The trial court described the sentence it envisioned for respondent, but stated that "formal sentencing" would have to wait until a PSIR had been prepared.

On January 20, 2022, another dispositional hearing was held. A PSIR had been prepared and reviewed by the court and all parties. At this hearing, respondent's counsel argued that respondent had believed he was being promised a blended sentence if he pled no contest. The trial court denied making any such promise[1] or that any error had taken place in the plea proceedings, but the Court offered to give respondent two weeks to consider whether he would withdraw his plea. The trial court stated that "the only reason that the youth wishes to withdraw his plea [was] . . . his dissatisfaction with the court's disposition," but that this offer was "solely based on the fact that I just believe in letting people have their day in court, if that's what they want."

On January 31, 2022, respondent's final dispositional hearing and sentencing took place. At that time, the trial court countermanded its earlier offer to allow respondent to withdraw his plea, and explained that there was no legal basis for that offer. The sentencing guidelines recommended a minimum sentence for the AWIM conviction of 11 years and 3 months to 18 years and 9 months. The trial court gave respondent another chance for allocution, and he again declined. The trial then court sentenced respondent to a minimum of 15 years in prison, as

---

[1] Notably, the court stated "in full disclosure I am quite offended that someone would say that this Court made a promise on the record," and observed that the court could review the Zoom recording to review and confirm what the court in fact said at the hearing.

described above, with the AWIM sentence falling within the guideline range. No blended sentence was offered.

On appeal, respondent argues that the trial court erred by refusing to allow him to withdraw his plea, that the court impermissibly based its sentencing decision in part on respondent's silence, and it impermissibly decided on a sentence before having the benefit of a PSIR. Respondent also argues that the resulting sentence was cruel or unusual punishment in violation of the United States and Michigan Constitutions.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

"Constitutional questions and issues of statutory interpretation are questions of law," subject to review de novo. *People v Watkins*, 491 Mich 450, 466; 818 NW2d 296 (2012). The interpretation of court rules is also reviewed de novo. *In re Diehl*, 329 Mich App 671, 687; 944 NW2d 180 (2019). We review a trial court's decision to grant or deny a request to withdraw a plea for an abuse of discretion. *People v Wilhite*, 240 Mich App 587, 594; 618 NW2d 386 (2000). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Watkins*, 491 Mich at 467.

Unpreserved claims, however, are reviewed for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three require-ments must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, and 3) the plain error affected substantial rights." *Id*. at 763. "The reviewing court should reverse only when the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 774.

### B. PLEA WITHDRAWAL

First, respondent argues that the trial court erred by not allowing him to withdraw his plea. MCR 6.310(B) states, in relevant part:

> Except as provided in subsection (3), after acceptance but before sentence,
>
> (1) a plea may be withdrawn on the defendant's motion or with the defendant's consent, only in the interest of justice, and may not be withdrawn if withdrawal of the plea would substantially prejudice the prosecutor because of reliance on the plea. If the defendant's motion is based on an error in the plea proceeding, the court must permit the defendant to withdraw the plea if it would be required by subrule (C).

MCR 6.435(B) provides as follows:

> After giving the parties an opportunity to be heard, and provided it has not yet entered judgment in the case, the court may reconsider and modify, correct, or rescind any order it concludes was erroneous.

"[S]ubjective dissatisfaction with a sentence" is not "grounds for withdrawing a plea." *Wilhite*, 240 Mich App at 597. In *Wilhite*, 240 Mich App at 588, the trial court granted the defendant's motion to withdraw his no contest plea. We reversed, reasoning that "the interest of justice" standard had not been met because the defendant "neither claimed actual innocence nor claimed that he had a valid defense to the charge," but rather "voluntarily and knowingly pleaded no contest to the charges pursuant to a plea agreement placed on the record, which did not encompass a delay of sentence or dismissal of charges." *Id*. at 596.

We conclude that the trial court properly recognized that it had incorrectly offered respondent the option of withdrawing his plea at the January 20, 2022 proceeding because there was no error in the plea proceedings and withdrawal would not be in the interest of justice. MCR 6.310(B)(1). Further, at the January 31, 2022 hearing, the trial court heard the arguments of both parties before exercising its authority under MCR 6.435(B) to rescind its invalid offer.

Respondent argues that he was entitled to withdraw his no contest plea on the ground that he did not fully understand the attendant ramifications. The record shows the trial court carefully explaining every pertinent concept to respondent in easy-to-understand, common language. Additionally, the court consistently provided explanations each time the respondent indicated he did not understand something and even tested him to ensure that he was not just saying "yes" without actually understanding. The trial court explained in detail how it could send respondent to prison right away or delay the adult sentence by sending him initially to juvenile detention. The court later reinforced this, and explained: "the actual disposition or the actual sentencing, there is no agreement as to that. So we haven't agreed that you're going to do one thing or another." In our view, the record does not show respondent was unaware, but instead reveals that respondent sometimes struggled at first with the pertinent concepts but was amply helped and thereafter understood the proceedings.

Further, it was not outside the range of principled outcomes for the trial court to catch its mistake of inviting respondent to consider withdrawing his plea without a proper basis for doing so, and to correct the error on its own motion before respondent endeavored to exercise that erroneous option. MCR 6.429.

For these reasons, we hold that the trial court did not abuse its discretion by refusing to allow respondent to withdraw his plea.

## C. RIGHT TO REMAIN SILENT

Next, respondent argues that the trial court erred when it based its sentencing decision in part on respondent declining to exercise his right of allocution as indicated by the court's comments at sentencing.

Respondent did not object to, or otherwise mention, the trial court's comments regarding his silence when offered his opportunities for allocution, however. See *Peterman v Dep't of Natural Resources*, 446 Mich 177, 183; 521 NW2d 499 (1994) (an issue must be raised in the trial court to be properly preserved for appellate review). Notably, the challenged comments all occurred on November 15, 2021, with three other disposition hearings held thereafter. Our review is thus only for plain error affecting substantial rights. *Carines*, 460 Mich at 764.

-4-

Both the United States and Michigan Constitutions provide that no person "shall be compelled in any criminal case to be a witness against himself." US Const, Am V; Const 1963, art 1, § 17. "This guarantee extends to the sentencing phase of the trial." *People v Conley*, 270 Mich App 301, 314; 715 NW2d 377 (2006) (quotation marks and citation omitted). "[A] sentencing court cannot, in whole or in part, base its sentence on a defendant's refusal to admit guilt." *People v Wesley*, 428 Mich 708, 711; 411 NW2d 159 (1987). "[E]vidence of a lack of remorse can be considered in determining an individual's potential for rehabilitation." *Id*. "Resentencing is required only if it is apparent that the court erroneously considered the defendant's failure to admit guilt, as indicated by action such as asking the defendant to admit his guilt or offering him a lesser sentence if he did." *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003).

As previously noted, defendant was convicted following his plea of no contest, or *nolo contendere*, which "is an admission of all the essential elements of a charged offense and, thus, is tantamount to an admission of guilt for the purposes of the criminal case." *People v Patmore*, 264 Mich App 139, 149; 693 NW2d 385 (2004). The caselaw concerning the right to silence, however, is primarily concerned with defendants who never admitted guilt, and courts must not pressure them to do so at sentencing. See, e.g., *People v Yennior*, 399 Mich 892; 282 NW2d 920 (1977). Defendant's no contest plea is not synonymous with a denial of guilt and conviction after a trial.

In any event, we do not read the trial court's comments as indicating that the court held respondent's lack of allocution against him. The court expressly acknowledged that respondent was "not required to" speak at allocution. The court also said respondent would not "be somebody different" if sent to a residential facility, thus revealing that its focus was on respondent's potential for rehabilitation, and a court may properly take into account a lack of remorse in that analysis. The court did not seek an admission of guilt and certainly did not offer a lesser sentence for such a thing. *Spanke*, 254 Mich App at 650. The challenged comments were also only part of the trial court's explanation for the sentence. The court pointed out how respondent showed a "disregard" for the safety of the persons near the victim at the time of the shooting. Indeed, the court seemed especially concerned that respondent put children at risk of being shot despite knowing the victim's family well and understanding that its children were at risk.

For these reasons, we conclude that the trial court did not reveal plain error by commenting on respondent's silence when he was offered an opportunity for allocution.

### D. CRUEL OR UNUSUAL PUNISHMENT

Finally, respondent argues that his sentence constituted cruel or unusual punishment given his personal history. Under this rubric, respondent also asserts that the trial court improperly decided on his sentence before it had the opportunity to consult a PSIR.

Respondent did not raise the issue below that he was sentenced before the PSIR was created, leaving that appellate objection unpreserved. Further, respondent presents no legal authority for the proposition that a trial court may not present an initial and nonfinal sentencing decision that remains subject to final review with the benefit of a PSIR. Respondent also fails to specify any piece of information in the PSIR that was not already available or that might otherwise have affected the trial court's sentencing decision had the PSIR brought it to the court's attention

sooner. We additionally note that at the initial sentencing, the court had both a Designated Case Pre-Sentencing Report and a Juvenile Assessment Summary Disposition Report, the latter being much more detailed than the PSIR. In sum, the substantive information included with the PSIR was contained in the other reports the trial court used for sentencing before it requested the PSIR. For these reasons, the trial court's decision involving its sentencing determination at the initial disposition hearing was not plain error, and certainly it did not "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Carines*, 460 Mich at 774.[2]

Regarding respondent's constitutional challenge, "[t]he Michigan Constitution prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16, whereas the United States Constitution prohibits cruel *and* unusual punishment, US Const, Am VIII. If a punishment 'passes muster under the state constitution, then it necessarily passes muster under the federal constitution.' " *People v Benton*, 294 Mich App 191, 204 (2011), quoting *People v Nunez*, 242 Mich App 610, 618-619 n 2 (2000). "[W]hether a penalty may be considered cruel or unusual is to be determined by a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Benton*, 294 Mich App at 204. That provision of the Michigan Constitution also includes "a prohibition on grossly disproportionate sentences." *Id*.

We must reject this constitutional challenge despite respondent's youthful age. As noted, the trial court imposed a minimum sentence within the guidelines range. See MCL 769.34(10) ("If a minimum sentence is within the appropriate guidelines sentence range, the court of appeals shall affirm that sentence . . . absent an error in scoring the sentencing guidelines or inaccurate information relied upon in determining the defendant's sentence.").

Our review of respondent's sentencing does not expose a violation of principles of proportionality. "[T]he issue under Const 1963, art 1, § 16 . . . concerns whether the punishment concededly chosen or authorized by the Legislature is so grossly disproportionate as to be unconstitutionally 'cruel or unusual.' " *People v Bullock*, 440 Mich 15, 34-35 n 17; 485 NW2d 866 (1992). A sentence "must be based upon the particular circumstances of each case," including, "(1) the potential for the reformation of the offender, (2) the protection of society, (3) the discipline of the wrongdoer, and (4) the deterrence of others from committing like offenses." *Wesley*, 428 Mich at 712-713. In this case, respondent argues that the trial court failed to consider his traumatic history as a neglect ward along with reports indicative of good rehabilitation potential.

Respondent's young life was filled with neglect, trauma, mental health challenges, domestic violence, gun violence and he was shot – all before age 16. Indeed, the trial court stated that his life had not been "perfect," and that his background "saddened" the court, even as the court characterized that background as less than "terrible." His home life was unstable, he was removed

---

[2]The trial court's decision to deny the blended sentence and send respondent to prison created the need to order the PSIR. Indeed, the Court did not need to sentence respondent at the November 15, 2021 dispositional hearing, but after reviewing the sentencing variables with counsel and refusing a blended sentence, the Court issued its decision, requested the PSIR, and set another hearing date.

from his mother's care for years at a time, and he suffered from depression, anxiety, and ADHD from a young age. He stopped attending school in the 9th grade out of fear for his own safety, two "brothers" murdered other people, he had ties to a group called "the 400" and he used substances from the age of 13. Respondent's psychological report revealed that respondent "took all 14 charges" because he would not tell authorities who else was involved in the shooting, and the Youth Social History report revealed he was under the influence during his offense. The court was informed that respondent exhibited good behavior in the juvenile facility and the prosecutor agreed with a blended sentence. Notably, none of the reports (neither the DPCSR nor the JASDR) recommended prison for respondent. But the nature of the sentencing offense cannot be ignored: respondent came close to ending a person's life who was even younger than he was, with younger children near where he was shooting. This was neither a self-defense nor a heat-of-the-moment situation. According to the record, respondent felt slighted when, after being shot months before, respondent was laughed at. So, he decided to drive to a location where he could take potentially deadly revenge despite knowing that young children might be in the vicinity.

We further note that in his interviews for the Juvenile Assessment Summary Disposition Report, respondent admitted that he typically carried a firearm, used marijuana daily, had injured others in fights, had a history of "fighting with guns," and "a history of shoplifting but never being caught." Although respondent contends that the trial court should have been more mindful of the sympathetic aspects of his past, there were also several concerning, or aggravating, aspects worthy of the court's consideration.

For these reasons, we conclude that the challenged sentence, while significant for a first-time youthful offender, did not violate the constitutional prohibitions of cruel or unusual punishment.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney