*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

NEIL KALINA,

Defendant-Appellant.

UNPUBLISHED
June 22, 2026
9:12 AM

No. 374407
Macomb Circuit Court
LC No. 2021-002448-FC

Before: MARIANI, P.J., and MURRAY and PATEL, JJ.

PER CURIAM.

A jury convicted defendant of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(b). Defendant was sentenced to concurrent terms of 7 to 15 years' imprisonment for each conviction. We affirmed defendant's convictions on appeal but vacated his sentences because the trial court improperly relied on acquitted conduct in assessing points for offense variable (OV) 12 in violation of our Supreme Court's decision in *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019).[1] On remand, the trial court departed upward from the sentencing guidelines range and once again imposed concurrent terms of 7 to 15 years' imprisonment for each conviction. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant's convictions result from his 1984 sexual abuse of the 14-year-old victim while defendant was a priest at the church the victim attended with his family. Defendant befriended a group of teenagers associated with the church, provided them with drugs and alcohol, and attended parties with them. He invited the victim to spend the night in the rectory, where the victim got drunk and "passed out." Several hours later, the victim awoke to defendant touching his penis. The victim did not immediately attempt to stop him. Defendant also caused the victim to inappropriately touch defendant's penis. This continued for about 10 minutes before the victim

---

[1] *People v Kalina*, unpublished per curiam opinion of the Court of Appeals, issued April 11, 2024 (Docket No. 362814), pp 8-9.

got up and left. The victim did not disclose this abuse to anyone until he was about 21 and discussed it with a therapist.

In 2018, the Michigan State Police partnered with the Michigan Attorney General to conduct a large-scale investigation involving sexual abuse within Catholic dioceses in the state. As part of the investigation, a tip line was opened. The victim's wife contacted the tip line shortly after it was established to provide information about the victim's experience. That tip led to the investigation, arrest, and conviction of defendant. At trial, witness testimony from the victim's peers suggested defendant abused at least one other minor male victim.

At the initial sentencing, defendant asserted the state vilified him and claimed the case was "well coached, riddled with fabrication, perjury, and lies." He expressed his intent to appeal and sought to "expose the real bias and prejudice against the Roman Catholic church." On appeal, this Court affirmed defendant's convictions but remanded for resentencing because the trial court improperly considered acquitted conduct in assessing points for OV 12 in violation of *Beck*. *People v Kalina*, unpublished per curiam opinion of the Court of Appeals, issued April 11, 2024 (Docket No. 362814), pp 8-9.

On remand,[2] the trial court recalculated a total of 20 points for all the OVs, which resulted in a minimum sentencing guidelines range of 12 to 36 months' imprisonment. Defense counsel indicated defendant accepted responsibility, expressed remorse, and participated in rehabilitative programs while incarcerated. The trial court determined that a departure from the guidelines range was warranted and sentenced defendant to concurrent terms of 7 to 15 years' imprisonment for each count of CSC-II. This appeal followed.

## II. SENTENCING CHALLENGES

## A. STANDARD OF REVIEW

Trial courts have discretion to depart from the sentencing guidelines range, as long as the ultimate sentence imposed is reasonable. *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, we must review "whether the trial court abused its discretion by violating the principle of proportionality . . . which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (cleaned up). "An abuse-of-discretion standard recognizes that there may be more than one principled outcome" and the trial court does not abuse its discretion by selecting one of these principled outcomes. *People v Boykin*, 510 Mich 171, 182; 987 NW2d 58 (2022).

We review for clear error the factual findings supporting a departure. *People v Babcock*, 469 Mich 247, 264; 666 NW2d 231 (2003). "[T]he clear-error standard requires us to affirm unless we are definitely and firmly convinced the trial court made a mistake . . . ." *People v Ziegler*, 343

---

[2] There were two resentencing hearings. However, the sentences articulated at the first hearing were "rescinded pending a correct Sentencing Investigation Report (SIR) to be prepared based on the 1988 guidelines."

Mich App 406, 410; 997 NW2d 493 (2022). We give due deference to the trial court because of its familiarity with the facts of the case. *Babcock*, 469 Mich at 268-269.

## B. REASONS FOR DEPARTURE

Defendant contends the trial court gave invalid reasons for its upward departure from the sentencing guidelines range. We disagree.

Michigan's sentencing guidelines are advisory only, *Lockridge*, 498 Mich at 399, but "remain a highly relevant consideration" and must be taken into account at sentencing. *Steanhouse*, 500 Mich at 474-475, quoting *Lockridge*, 498 Mich at 391. A trial court may depart from the guidelines as long as the sentence imposed is reasonable. *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). A sentence is reasonable "if it adheres to the principle of proportionality set forth in [*People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990)]." *Id*.

A proportionate sentence considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *Boykin*, 510 Mich at 183. But "these are not the only relevant sentencing criteria and trial courts are not required to consider each of these factors when imposing a sentence." *Id*. at 183-184. In *People v Dixon-Bey*, 340 Mich App 292, 296; 985 NW2d 904 (2022) (cleaned up), we explained:

> A number of factors have been deemed appropriate to consider when determining the proportionality of a departure sentence, including the seriousness of the offense; factors not accounted for by the guidelines, such as the prior relationship between the victim and the defendant, a lack of remorse, or a low potential for rehabilitation; and factors accounted for by the guidelines but given inadequate weight under the circumstances. Departures are appropriate when the guidelines do not adequately account for important factors legitimately considered at sentencing.

### 1. UNCHARGED CONDUCT

First, defendant takes issue with the trial court's statement defendant "probably . . . groomed and then abused" other victims because this considers uncharged conduct not established by a preponderance of the evidence. We disagree.

Our Supreme Court has held sentencing courts may consider uncharged conduct but not acquitted conduct:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. [*Beck*, 504 Mich at 626.]

Defendant relies on the trial court's reference to the shelter allegedly operated by defendant in California but fails to account for trial testimony suggesting that defendant abused at least one

other male minor. Specifically, one witness recalled seeing defendant in his underwear in bed with another minor. A different witness observed defendant presumably fellating the other minor in a dark room during a party and remembered seeing a distressed look on the minor's face. The trial court did not explicitly mention this uncharged conduct at resentencing but mentioned several witnesses cried on the witness stand about "what went on back in that summer when they were 13, 14-years old when [defendant was] a priest." The trial court also referenced defendant's actions in California after he pleaded guilty to possession of cocaine and stated that defendant "probably" groomed or abused other boys. The trial court also referenced a "Facebook page for at-risk homeless boys age[d] 16 to 21, which you marketed it [sic] as a Christian outreach academy during the pendency of this case." The trial court did not clearly err by inferring on the basis of defendant's activities targeting "a vulnerable part of society" that there could be more victims. Defendant argues that there was "no evidence underlying [the] assumption" defendant abused other victims in California, but this position ignores the trial testimony. The trial court did not clearly err by identifying conduct not adequately accounted for in the scoring of the sentencing guidelines. See *Dixon-Bey*, 340 Mich App at 296. Because our Supreme Court has recognized uncharged conduct, if supported by a preponderance of the evidence, may be considered by sentencing courts, this reason for the trial court's departure is valid. See *Beck*, 504 Mich at 626.

## 2. INACCURATE INFORMATION

Defendant further argues that the trial court relied on inaccurate information by stating that defendant abused the victim for several years and argues he is entitled to resentencing as a result. We disagree.

Defendant does not challenge the minimum sentencing guidelines range calculation or the information in his PSIR. Rather, he challenges the trial court's statement at sentencing as inaccurate. Criminal defendants are entitled to be sentenced according to accurate information. *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). Consequently, a sentence based on inaccurate information is invalid. *Id*.

At resentencing, the trial court stated defendant "abused [the victim] for several years." Defendant suggests that the only abuse the trial court referred to was "sexual abuse." The trial court did not state that defendant *sexually abused* the victim for several years but it did discuss defendant's exploitation and grooming of the victim. Trial testimony revealed a one-to-two-year period of predatory preoffense conduct leading up to the sexual abuse and instances after the assault when defendant allegedly kissed the victim on the mouth. Defendant's charges may have arisen out of a "single incident" when the victim was 14 years old, but that incident was the product of one or two years of preparation that can be considered part of the sexual abuse. Defendant further asserts "several" refers to "more than one or two." Trial testimony established that the victim and defendant met when the victim was 12 years old, defendant groomed the victim, and defendant sexually abused the victim when he was 14 years old. We are not definitely and firmly convinced that the trial court made a mistake by stating that the abuse spanned several years because defendant engaged in "grooming" conduct before committing the offense.

## 3. EXPRESSIONS OF REMORSE

Defendant also contends the trial court made a "demonstrably false" claim defendant "never expressed any remorse" when, in fact, the trial court acknowledged defendant's allocution at the beginning of its sentencing decision. We disagree.

A defendant's "expressions of remorse" are among the factors considered under the proportionality standard. *Walden*, 319 Mich App at 353. "Expressions" is plural, suggesting the trial court may consider multiple expressions of regret or guilt if several have been made. *Id*. Further, "a lack of remorse can be considered at sentencing." *Dixon-Bey*, 340 Mich App at 296.

The trial court noted it was "taking into consideration the defendant's allocution before the Court." However, the trial court also recalled: "[Y]ou actually blamed the victim and claimed that the prosecutor was prejudice[d] against the Catholic faith when you were due to be sentenced. I'm frankly not seeing any reformation in your thought process." The trial court later opined: "I think you didn't get remorseful until you got caught and you came to sentencing." We defer to a trial court's assessment of witness credibility, *Ziegler*, 343 Mich App at 411, and it appears the trial court was unconvinced of the veracity of the remorse expressed in defendant's allocution, given his longstanding failure to express such remorse. Defendant asserts: "At resentencing, a trial court must consider updated information about the defendant," but this does not mean the trial court must ignore defendant's conduct before resentencing.

Defendant's expressions of remorse and lack of remorse were properly considered by the trial court. *Walden*, 319 Mich App at 353; *Dixon-Bey*, 340 Mich App at 296. It did not clearly err by determining defendant's allocution at resentencing was unconvincing in light of his lack of remorse beforehand.

## 4. ABUSE OF POSITION OF AUTHORITY

Defendant further asserts that the trial court improperly considered defendant's exploitation of the victim because exploitation is already an element of the crime of CSC-II, MCL 750.520c(1)(b). We disagree.

In *People v Gibson*, 219 Mich App 530, 534; 557 NW2d 141 (1996), this Court, when examining whether the sentencing guidelines allow a factor that is an element of the crime charged to also be considered when computing an OV score, held that "the Sentencing Guidelines allow a factor that is an element of the crime charged to also be considered when computing an offense variable score." A conviction under MCL 750.520c(1)(b)(*iii*) requires the finding the defendant engaged in sexual contact with another person "at least 13 but less than 16 years of age" and the defendant was "in a position of authority over the victim and the actor used this authority to coerce the victim to submit." Under the 1988 sentencing guidelines, points are assessed to OV 7[3] for "offender exploitation of victim vulnerability" in criminal sexual conduct (CSC) cases. Points are assessed for varying degrees of exploitation. When an offender exploits the victim, i.e., manipulates the victim for selfish or unethical purposes, because of their youth or by abuse of

---

[3] Victim exploitation is now considered under OV 10, MCL 777.40.

authority status, 15 points may be assessed. An offender abuses his authority status when the "victim is exploited out of fear or deference to an authority figure." Fewer points are assigned for different types of exploitation, suggesting the Legislature intended the *degree* of victim exploitation to be considered by sentencing courts, even when such conduct is already an element of the crime.

This Court rejected the argument the victim's youth and the defendant's abuse of authority were improperly considered under OV 7 of the 1988 guidelines when those factors were also elements of the offense in *People v Nantelle*, 215 Mich App 77, 84-85; 544 NW2d 667 (1996). In that case, the defendant called his 11-year-old stepdaughter into the bedroom, asking for a hug and kiss, then attempted to place her hand on his penis. *Id*. at 84. This Court found the defendant abused his position of authority and the victim's youth and rejected the defendant's contention "it was improper for the trial court to base the score for OV 7 on the victim's youth . . . and on defendant's abuse of his authority status because the offense already takes into consideration" those factors. *Id*. at 84-85.

In this case, defendant's CSC-II convictions required findings that defendant engaged in sexual contact with another person between 13 and 16 years old, was "in a position of authority" over the victim, and "used this authority to coerce the victim to submit." MCL 750.520c(1)(b)(*iii*). The trial court also considered defendant's exploitation of the victim when assessing points for OV 7: "In terms of OV 7, the offender's exploitation of a victim's vulnerability, *15 points is inadequate*." The trial court made clear its belief that the guidelines did not sufficiently account for the "high degree of victim exploitation," emphasizing defendant's role as "one of the highest authorities in [the victim's] world." The trial court referenced the respect the victim's family gave defendant and defendant's use of his status as a priest to befriend, groom, and abuse the victim. Notably, the victim asserted that defendant sexually abused him when he was "passed out" after defendant supplied him with alcohol. The trial court determined that the sentencing guidelines *inadequately* reflected defendant's "extraordinary and egregious abuse of authority." The relationship between defendant and the victim was also considered in this context and is not otherwise encompassed in the sentencing guidelines. *Walden*, 319 Mich App at 352-353. The trial court properly evaluated the severity of defendant's exploitative conduct in its sentencing decision.

## C. ARTICULATION OF REASONS FOR EXTENT OF DEPARTURE

Defendant argues that the trial court did not articulate its reasons for the extent of its upward departure sentence. We disagree.

When a trial court imposes a departure sentence, its "articulation must be sufficiently detailed to facilitate appellate review." *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). "This includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *Id*. And the court must explain "the *extent* of the departure independent of the reasons given to impose a departure sentence." *Id*. at 305-306. However, a "trial court is not required to use any formulaic or 'magic' words in doing so." *Babcock*, 469 Mich at 259 n 13.

The record discloses that the trial court gave ample reasons to justify the extent of its upward departure from sentencing guidelines. The trial court stated, "The sentencing guidelines of 12 to 36 are wholly disproportionate and inadequate in terms of the nature of the offenses, the effect on the victims [sic], and the behavior of the defendant." The trial court explained why the 15 points assessed for OV 7, exploitation of victim's vulnerability, and the five points for OV 13, psychological injury to the victim, were insufficient in the circumstances. In other words, the trial court opined that the sentencing guidelines did not sufficiently reflect the seriousness of defendant's crimes. The trial court continued by analyzing basic factors such as the reformation of the offender, protection of society, punishment or discipline, and deterrence. See *Boykin*, 510 Mich at 183.

After addressing these goals of sentencing, the trial court expressed:

> I believe that this sentence is reasonable, the reasons for my upward departure, which I will tell you in a minute, the inadequate weight to the OV scoring, the predatory conduct, complaining witness [the victim's] lifelong anguish and extraordinary abuse of your position as a Catholic priest warrant an upward departure.

The trial court first explained that the seriousness of the offense was disproportionate to the sentencing guidelines range and referenced the "extraordinary and egregious abuse of authority" defendant displayed. The trial court noted that defendant "robbed" the victim of his faith. The trial court also commented on defendant's lack of remorse suggesting defendant "didn't get remorseful until [he] got caught and [he] came to sentencing." This is a factor not considered by the guidelines, but which courts may consider. See *Dixon-Bey*, 340 Mich App at 296. Next, the trial court commented on defendant's potential for rehabilitation, which is also appropriate. See *id*. It noted defendant "tried to deal with boys" in California and operated "some sort of missionary for at-risk youths" here in Michigan, reflecting a continuation of predatory behavior. The trial court concluded:

> I believe that the sentence I'm about to impose is more proportionate than the guideline range of 12 to 36 because of the egregious offense, not adequately account[ing] for, [the] lifelong absolutely, totally encompassing devastation of every aspect of [the victim's] life. Your intentional abuse of your position of the highest of authority, a man of God, a man of cloth to lure him into the rectory, supplying him with wine, beer, marijuana, and cocaine, and then sexually abuse[d] him, forced him to touch you, forced you to touch him knowing such a young boy didn't know any different. And the trust, trust [in] his friend the priest.

The trial court did not clearly err by identifying factors not adequately accounted for in the scoring of the sentencing guidelines. See *id*. The trial court explicitly referred to the principle of proportionality and addressed several factors in turn, elaborating on each one. It was not required to sentence defendant with "mathematical certainty" or say "precise words" in explaining its departure. *Smith*, 482 Mich at 311. Defendant has not demonstrated any basis for concluding that the principle of proportionality was violated. *Steanhouse*, 500 Mich at 471.

## D. RIGHT TO JURY TRIAL

Finally, defendant asserts that the trial court's sentence was improperly based on defendant's exercise of his right to trial. We disagree.

"A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial." *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011), citing *People v Earegood*, 383 Mich 82, 85; 173 NW2d 205 (1970); US Const, Am VI; Const 1963, art 1 § 20. Similarly, a sentence cannot be based, even in part, "on a defendant's refusal to admit guilt." *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007). Evidence a defendant lacks remorse, however, may be considered as it relates to rehabilitation potential. *Id*. Three factors are evaluated in determining "whether sentencing was improperly influenced by the defendant's failure to admit guilt." *Id*. These factors are "(1) the defendant's maintenance of innocence after conviction; (2) the judge's attempt to get the defendant to admit guilt; and (3) the appearance that had the defendant affirmatively admitted guilt, his sentence would not have been so severe." *Id*., quoting *People v Wesley*, 428 Mich 708, 713; 411 NW2d 159 (1987). If the record shows an indication of the three factors, "the sentence was likely to have been improperly influenced by the defendant's persistence in his innocence." *Id*. However, if the trial court only addressed "remorsefulness as it bore upon defendant's rehabilitation," no error requiring reversal has occurred. *Id*.

As an initial matter, defendant referenced the trial court's statements in the first resentencing. But the parties acknowledge that sentence was rescinded. Accordingly, our analysis is limited to the second resentencing.

Defendant has not argued any of the three factors in *Wesley*, 428 Mich at 713, are present in this case. Instead, he contends the following statement is evidence that the trial court faulted defendant for exercising his right to a jury trial:

> You required [the victim] and several witnesses to testify in this trial and I've never had a trial where I've had two or three or four 50-year old individuals in the witness stand to my left crying and getting tearful about what went on back in that summer when they were 13, 14-years old when you were a priest.

This statement was made in the context of OV 13, discussing psychological injury to the victim. The trial court was explaining why five points was inadequate, considering the victim "suffered for 40-plus years," struggled with drug addiction, maintaining employment, finances, intimacy, and his marriage, and has been in therapy as a result of defendant's abuse. Rather than faulting defendant for exercising his right to trial, the trial court discussed the observable severity of the psychological injury the victim and other witnesses suffered, even 40 years after the offense.

Defendant has pointed to no other evidence suggesting that the trial court based its sentence in part on defendant's decision to go to trial. Because there is no evidence the sentences were

-8-

"improperly influenced by the defendant's persistence in his innocence," no legal error was made. *Wesley*, 428 Mich at 713. Consequently, the trial court did not abuse its discretion.

Affirmed.

/s/ Philip P. Mariani
/s/ Christopher M. Murray
/s/ Sima G. Patel